

# SEALED

2011 FEB 22  A 11: 46

1  WILLARD K. TOM
   General Counsel
2
3  EMILY COPE BURTON
   eburton@ftc.gov
4  SHAMEKA L. GAINEY
   sgainey@ftc.gov
5  Federal Trade Commission
   600 Pennsylvania Avenue, NW, H-286
6  Washington, DC 20580
   202-326-2728 (Burton)
7  202-326-2570 (Gainey)
   202-326-3395 (Fax)
8
   BLAINE T.WELSH
9  blaine.welsh@usdcj.gov
   Assistant United States Attorney
10 Nevada Bar No. 4790
   333 Las Vegas Blvd. South, Suite 5000
11 Las Vegas, NV 89101
   702-388-6336
12 702-388-6787 (Fax)
13 Attorneys for Plaintiff Federal Trade Commission
14
15            **UNITED STATES DISTRICT COURT**
                **DISTRICT OF NEVADA**
16
17 FEDERAL TRADE COMMISSION,          )
                                       )   **2:11-cv-00283-JCM -GWF**
18          Plaintiff,                 )
                                       )
19 v.                                  )   **[FILED UNDER SEAL]**
                                       )
20 IVY CAPITAL, INC., a Nevada Corporation;  )
                                       )
21 FORTUNE LEARNING SYSTEM, LLC, a     )
   Nevada Limited Liability Corporation;  )
22                                     )
   FORTUNE LEARNING, LLC, a Utah Limited  )
23 Liability Corporation;              )
                                       )
24 VIANET, INC., a Nevada Corporation;  )
                                       )
25 ENRICH WEALTH GROUP, LLC, a California  )
   Limited Liability Corporation;      )

1

1    BUSINESS DEVELOPMENT DIVISION, LLC, a    )
     Nevada Limited Liability Corporation;    )
                                              )
2    NEVADA CORPORATE DIVISION, INC., a       )
     Nevada Corporation;                      )
3                                             )
     CORPORATE CREDIT DIVISION, LLC, a        )
4    Nevada Limited Liability Corporation;    )
                                              )
5    CREDIT REPAIR DIVISION, LLC, a Nevada    )
     Limited Liability Corporation;           )
6                                             )
     TAX PLANNING DIVISION, LLC, a Nevada     )
7    Limited Liability Corporation;           )
                                              )
8    ZYZAC COMMERCE SOLUTIONS, INC., a        )
     Nevada Corporation;                      )
9                                             )
     THE SHIPPER, LLC, a Utah Limited Liability )
10   Corporation, also d/b/a                  )
     WHOLESALEMATCH.COM;                      )
11                                            )
     3 DAY MBA, LLC, a Nevada Limited Liability )
12   Corporation;                             )
                                              )
13   GLOBAL FINANCE GROUP, LLC, a Nevada      )
     Limited Liability Corporation;           )
14                                            )
     VIRTUAL PROFIT, LLC, a Nevada Limited    )
15   Liability Corporation;                   )
                                              )
16   DREAM FINANCIAL, a Nevada Corporation;   )
                                              )
17   ICI DEVELOPMENT, INC., a Nevada          )
     Corporation;                             )
18                                            )
     IVY CAPITAL, LLC, a Nevada Limited Liability )
19   Corporation;                             )
                                              )
20   LOGIC SOLUTIONS, LLC, a Nevada Limited   )
     Liability Corporation;                   )
21                                            )
     OXFORD DEBT HOLDINGS, LLC, a Nevada      )
22   Limited Liability Corporation;           )
                                              )
23   REVSYNERGY. LLC, a Nevada Limited Liability )
     Corporation;                             )
24                                            )
     SELL IT VIZIONS, LLC, a Nevada Limited   )
25   Liability Corporation;                   )
                                              )

2

KYLE G. KIRSCHBAUM, individually and as an
officer of Defendants Ivy Capital, Inc.; Vianet,
Inc.; ICI Development, Inc.; Oxford Debt
Holdings, LLC; and Sell It Vizions, LLC;   )
)
)
)
)

JOHN H. HARRISON, individually and as an
officer of Defendants Ivy Capital, Inc.; Fortune
Learning System. LLC; Vianet, Inc.; Business
Development Division, LLC; Corporate Credit
Division, LLC; Credit Repair Division, LLC; Tax
Planning Division, LLC; 3 Day MBA, LLC; ICI
Development, Inc.; Logic Solutions, LLC; Oxford
Debt Holdings, LLC; Revsynergy, LLC; and Sell
It Vizions, LLC;   )
)
)
)
)
)
)
)
)

STEVEN E. LYMAN, individually and as an
officer of Defendants Ivy Capital, Inc.; Vianet,
Inc.; ICI Development, Inc.; Logic Solutions,
LLC; Oxford Debt Holdings, LLC; Sell It Vizions,
LLC; and Virtual Profit, LLC;   )
)
)
)
)

BENJAMIN E. HOSKINS, individually and as an
officer of Defendants Dream Financial; Logic
Solutions, LLC; Oxford Debt Holdings, LLC; Sell
It Vizions, LLC; and Global Finance Group, LLC;   )
)
)
)

CHRISTOPHER M. ZELIG, individually and as
an officer of Defendant Zyzac Commerce
Solutions, Inc.;   )
)
)
)

STEVEN J. SONNENBERG, individually and as a
manager of Defendants Fortune Learning, LLC
and The Shipper, LLC, also d/b/a
Wholesalematch.com;   )
)
)
)

JAMES G. HANCHETT, individually and as a
manager of Defendant Fortune Learning, LLC; and   )
)
)

JOSHUA F. WICKMAN, individually and as an
owner of Defendant Enrich Wealth Group, LLC;   )
)
)

     Defendants, and   )

CHERRYTREE HOLDINGS, LLC, a Nevada
Limited Liability Corporation;   )
)

OXFORD FINANCIAL, LLC, a Nevada Limited
Liability Corporation;   )
)

S&T TIME, LLC, a Nevada Limited Liability
Corporation;   )
)

3

VIRTUCON, LLC, a Nevada Limited Liability )
Corporation; )
 )
CURVA, LLC, a Nevada Limited Liability )
Corporation; )
 )
MOWAB, INC., a Utah Limited Liability )
Corporation; )
 )
KIERSTON KIRSCHBAUM; )
 )
MELYNA HARRISON; )
 )
TRACY LYMAN; and )
 )
LEANNE HOSKINS, )
 )
      Relief Defendants. )

4

## COMPLAINT FOR PERMANENT
## INJUNCTION AND OTHER EQUITABLE RELIEF

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.      The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b) and 57b, and the Telemarketing and Consumer Fraud Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101 – 6108, to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FTC's Trade Regulation Rule entitled Telemarketing Sales Rule ("TSR" or "Rule"), 16 C.F.R. Part 310.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, 15 U.S.C. §§ 45(a), 53(b), 57b, 6102(c), and 6105(b).

3.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.      The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair and deceptive acts or practices in or affecting commerce. The FTC is also charged with enforcement of the Telemarketing Act. Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and

1    abusive telemarketing acts or practices.

2    5.    The FTC is authorized to initiate federal district court proceedings, by its own

3    attorneys, to enjoin violations of the FTC Act, and to secure such other equitable relief as may be

4    appropriate in each case, including rescission or reformation of contracts, restitution, the refund

5    of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b), 56(a)(2)(A) –

6    (B) and 57b.

7

8                                    **DEFENDANTS**

9                          **Primary and Upsell Defendants**

10    6.    Defendant Ivy Capital, Inc. ("Ivy Capital") is a Nevada corporation with its

11    principal place of business at 3027 East Sunset Road, Suite 201, Las Vegas, Nevada.  Ivy Capital

12    transacts or has transacted business in this District and throughout the United States.

13    7.    Defendant Fortune Learning System, LLC ("FLS") is a former Nevada limited

14    liability corporation with its principal place of business at 3027 East Sunset Road, Suite 201, Las

15    Vegas, Nevada.  FLS was a registered Nevada corporation until it dissolved on August 31, 2010.

16    However, since that time, FLS has continued to operate as a *de facto* corporation by selling its

17    services to consumers.  FLS transacts or has transacted business in this District and throughout

18    the United States.

19    8.    Defendant Fortune Learning, LLC ("Fortune Learning") is a Utah limited liability

20    corporation with its principal place of business at 251 River Park Drive, Suite 325, Provo, Utah,

21    and a secondary address at 826 East State Road, Suite 210 in American Fork, Utah.  Fortune

22    Learning transacts or has transacted business in this District and throughout the United States.

23    9.    Defendant Vianet, Inc. ("Vianet") is a former Nevada corporation with its

24    principal place of business at 3027 East Sunset Road, Suite 201, Las Vegas, Nevada.  Vianet was

25

6

a registered Nevada corporation until it dissolved on September 1, 2010. Vianet transacts or has transacted business in this District and throughout the United States.

10.     Defendant Enrich Wealth Group, LLC ("EWG") is a California limited liability corporation with its principal place of business at 3130 South Harbor Boulevard, Santa Ana, California. EWG transacts or has transacted business in this District and throughout the United States.

11.     Defendant Business Development Division, LLC ("BDD") is a Nevada limited liability corporation with its principal place of business at 3027 East Sunset Road, Suite 201, Las Vegas, Nevada. BDD transacts or has transacted business in this District and throughout the United States.

12.     Defendant Nevada Corporate Division, Inc. ("NCD") is a Nevada corporation with its principal place of business at 3027 East Sunset Road, Suite 201, Las Vegas, Nevada. NCD transacts or has transacted business in this District and throughout the United States.

13.     Defendant Corporate Credit Division, LLC ("CCD") is a Nevada limited liability corporation with its principal place of business at 3027 East Sunset Road, Suite 201, Las Vegas, Nevada. CCD transacts or has transacted business in this District and throughout the United States.

14.     Defendant Credit Repair Division, LLC ("CRD") is a former Nevada limited liability corporation with its principal place of business at 3027 East Sunset Road, Suite 201, Las Vegas, Nevada. CRD was dissolved on October 13, 2010. CRD transacts or has transacted business in this District and throughout the United States.

15.     Defendant Tax Planning Division, LLC ("TPD") is a Nevada limited liability corporation with its principal place of business at 3027 East Sunset Road, Suite 201, Las Vegas, Nevada. TPD transacts or has transacted business in this District and throughout the United States.

7

16.    Defendant Zyzac Commerce Solutions, Inc. ("Zyzac") is a Nevada corporation with its principal place of business at 3027 East Sunset Road, Suite 201, Las Vegas, Nevada. Zyzac transacts or has transacted business in this District and throughout the United States.

17.    Defendant The Shipper, LLC also d/b/a Wholesalematch.com ("WSM") is a Utah limited liability corporation with its principal place of business at 1875 South State Street, Suite T300, Orem, Utah. WSM transacts or has transacted business in this District and throughout the United States.

18.    Defendant 3 Day MBA, LLC ("3 Day MBA") is a Nevada limited liability corporation with its principal place of business at 3027 East Sunset Road, Suite 201, Las Vegas, Nevada. 3 Day MBA transacts or has transacted business in this District and throughout the United States.

### Lead Generating Corporate Defendants

19.    Defendant Global Finance Group, LLC ("GFG") is a Nevada limited liability corporation with its principal place of business at 3027 East Sunset Road, Suite 201, Las Vegas, Nevada. GFG transacts or has transacted business in this District and throughout the United States.

20.    Defendant Virtual Profit, LLC ("Virtual Profit") is a Nevada limited liability corporation with its principal place of business at 2510 East Sunset Road, Suite 5, Las Vegas, Nevada. Virtual Profit transacts or has transacted business in this District and throughout the United States.

### Shell Corporate Defendants

21.    Defendant Dream Financial is a Nevada corporation with its principal place of business at 2200 East Patrick Lane, Suite 25, Las Vegas, Nevada. Dream Financial transacts or has transacted business in this District and throughout the United States.

22.    Defendant ICI Development, Inc. ("ICI Development") is a Nevada corporation

1   with its principal place of business at 3027 East Sunset Road, Suite 201, Las Vegas, Nevada. ICI

2   Development transacts or has transacted business in this District and throughout the United

3   States.

4         23.    Defendant Ivy Capital, LLC is a Nevada limited liability corporation. Its

5   registered agent, NCD, is located at 3027 East Sunset Road, Suite 201, Las Vegas, Nevada. Ivy

6   Capital, LLC transacts or has transacted business in this District and throughout the United

7   States.

8         24.    Defendant Logic Solutions, LLC ("Logic Solutions") is a Nevada limited liability

9   corporation with its principal place of business at 3027 East Sunset Road, Suite 201, Las Vegas,

10  Nevada. Logic Solutions transacts or has transacted business in this District and throughout the

11  United States.

12        25.    Defendant Oxford Debt Holdings, LLC ("Oxford Debt") is a Nevada limited

13  liability corporation with its principal place of business at 3027 East Sunset Road, Suite 201, Las

14  Vegas, Nevada. Oxford Debt transacts or has transacted business in this District and throughout

15  the United States.

16        26.    Defendant Revsynergy, LLC ("Revsynergy") is a Nevada limited liability

17  corporation with its principal place of business at 3027 East Sunset Road, Suite 201, Las Vegas,

18  Nevada. Revsynergy transacts or has transacted business in this District and throughout the

19  United States.

20        27.    Defendant Sell It Vizions, LLC ("Sell It") is a Nevada limited liability

21  corporation with its principal place of business at 3027 East Sunset Road, Suite 201, Las Vegas,

22  Nevada. Sell It transacts or has transacted business in this District and throughout the United

23  States.

24

25

**Individual Defendants**

28.     Defendant Kyle G. Kirschbaum ("Kirschbaum") is the President of Ivy Capital, and was the Director and President of Vianet. He is also an officer of ICI Development, Oxford Debt, and Sell It. At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts set forth in this Complaint. Kirschbaum resides in this District and in connection with the matters alleged herein, transacts or has transacted business in this District.

29.     Defendant John H. Harrison ("Harrison") is the Treasurer and Director of Ivy Capital and was the Secretary of Vianet. He is also an officer, agent or member of FLS, BDD, CCD, CRD, TPD, 3 Day MBA, ICI Development, Logic Solutions, Oxford Debt, Revsynergy, and Sell It. At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Harrison resides in this District and in connection with the matters alleged herein, transacts or has transacted business in this District.

30.     Defendant Steven E. Lyman ("Lyman") is the Secretary of Ivy Capital and was the Treasurer of Vianet. He is also an officer of ICI Development, Logic Solutions, Oxford Debt, Sell It, and Virtual Profit. At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Lyman resides in this District and in connection with the matters alleged herein, transacts or has transacted business in this District.

31.     Defendant Benjamin E. Hoskins ("Hoskins") is an owner of Ivy Capital. He is also an officer, agent or member of Dream Financial, Logic Solutions, Oxford Debt, Sell It, and GFG. At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Hoskins resides in this District and in connection with the

1 matters alleged herein, transacts or has transacted business in this District.

2        32.     Defendant Christopher M. Zelig ("Zelig") is the President, Director, Treasurer,

3 and Secretary of Zyzac. At times material to this Complaint, acting alone or in concert with

4 others, he has formulated, directed, controlled, had the authority to control, or participated in the

5 acts and practices set forth in the Complaint. In connection with the matters alleged herein, Zelig

6 transacts or has transacted business in this District.

7        33.     Defendant Steven J. Sonnenberg ("Sonnenberg") is a manager of Fortune

8 Learning, and the manager and registered agent for WSM. At times material to this Complaint,

9 acting alone or in concert with others, he has formulated, directed, controlled, had the authority

10 to control, or participated in the acts and practices set forth in this Complaint. In connection with

11 the matters alleged herein, Sonnenberg transacts or has transacted business in this District.

12        34.     Defendant James G. Hanchett ("Hanchett") is the registered agent and a manager

13 of Fortune Learning. At times material to this Complaint, acting alone or in concert with others,

14 he has formulated, directed, controlled, had the authority to control, or participated in the acts

15 and practices set forth in this Complaint. In connection with the matters alleged herein, Hanchett

16 transacts or has transacted business in this District.

17        35.     Defendant Joshua F. Wickman ("Wickman") is the owner and registered agent of

18 EWG. At times material to this Complaint, acting alone or in concert with others, he has

19 formulated, directed, controlled, had the authority to control, or participated in the acts and

20 practices set forth in this Complaint. In connection with the matters alleged herein, Wickman

21 transacts or has transacted business in this District.

22                                       **Relief Defendants**

23        36.     Relief Defendant Cherrytree Holdings, LLC ("Cherrytree") is a Nevada limited

24 liability corporation with its principal place of business at 3027 East Sunset Road, Suite 201, Las

25 Vegas, Nevada. Defendant Kirschbaum and his wife Relief Defendant Kierston Kirschbaum are

11

the only officers of Cherrytree. Cherrytree is an officer of Ivy Capital, LLC and has received funds that can be traced directly to Defendants' unlawful acts or practices alleged below. Cherrytree does not have a legitimate claim to those funds.

37.     Relief Defendant Oxford Financial, LLC ("Oxford Financial") is a Nevada limited liability corporation with its principal place of business at 3027 East Sunset Road, Suite 201, Las Vegas, Nevada. Defendant Hoskins and his wife Relief Defendant Leanne Hoskins are the only officers of Oxford Financial. Oxford Financial is an officer of Ivy Capital, LLC and has received funds that can be traced directly to Defendants' unlawful acts or practices alleged below. Oxford Financial does not have a legitimate claim to those funds.

38.     Relief Defendant S&T Time, LLC ("S&T Time") is a Nevada limited liability corporation with its principal place of business at 3027 East Sunset Road, Suite 201, Las Vegas, Nevada. Defendant Lyman and his wife Relief Defendant Tracy Lyman are the only officers of S&T Time. S&T Time is an officer of Ivy Capital, LLC and has received funds that can be traced directly to Defendants' unlawful acts or practices alleged below. S&T Time does not have a legitimate claim to those funds.

39.     Relief Defendant Virtucon, LLC ("Virtucon") is a Nevada limited liability. Its registered agent, NCD, is located at 3027 East Sunset Road, Suite 201, Las Vegas, Nevada. Defendant Harrison and his wife Relief Defendant Melyna Harrison are the only officers of Virtucon. Virtucon is an officer of Ivy Capital, LLC and has received funds that can be traced directly to Defendants' unlawful acts or practices alleged below. Virtucon does not have a legitimate claim to those funds.

40.     Relief Defendant Curva, LLC ("Curva") is a Nevada limited liability corporation with its principal place of business at 3027 East Sunset Road, Las Vegas, Nevada. Defendant Zelig is the sole officer of Curva. Curva has received funds that can be traced directly to Defendants' unlawful acts or practices alleged below. Curva does not have a legitimate claim to

1  those funds.

2      41.    Relief Defendant Mowab, Inc. ("Mowab") is a Utah corporation with its principal

3  place of business at 11559 South Thornberry Lane, Draper, Utah. Relief Defendant Leanne

4  Hoskins is an officer and the registered agent for Mowab. Mowab has received funds that can be

5  traced directly to Defendants' unlawful acts or practices alleged below. Mowab does not have a

6  legitimate claim to those funds.

7      42.    Relief Defendant Kierston Kirschbaum is the spouse of Defendant Kirschbaum.

8  She resides in this District. She is an officer of Cherrytree and has received funds that can be

9  traced directly to Defendants' unlawful acts or practices alleged below. She does not have a

10  legitimate claim to those funds.

11      43.    Relief Defendant Melyna Harrison is the spouse of Defendant Harrison. She

12  resides in this District. She is an officer of Virtucon and has received funds that can be traced

13  directly to Defendants' unlawful acts or practices alleged below. She does not have a legitimate

14  claim to those funds.

15      44.    Relief Defendant Tracy Lyman is the spouse of Defendant Lyman. She resides in

16  this District. She is a managing member of S&T Time and has received funds that can be traced

17  directly to Defendants' unlawful acts or practices alleged below. She does not have a legitimate

18  claim to those funds.

19      45.    Relief Defendant Leanne Hoskins is the spouse of Defendant Hoskins. She

20  resides in this District. She is an officer of Oxford Financial and Mowab and the registered agent

21  for Mowab and has received funds that can be traced directly to Defendants' unlawful acts or

22  practices alleged below. She does not have a legitimate claim to those funds.

23

24                    **COMMON ENTERPRISE**

25      46.    Defendants Ivy Capital, FLS, Fortune Learning, Vianet, and EWG (the "Primary

1   Defendants"); BDD, NCD, CCD, CRD, TPD, Zyzac, WSM, and 3 Day MBA (the "Upsell

2   Defendants"); GFG and Virtual Profit (the "Lead Generating Defendants"); and Dream

3   Financial, ICI Development, Ivy Capital, LLC, Logic Solutions, Oxford Debt, Revsynergy, and

4   Sell It (the "Shell Defendants") (collectively, the "Corporate Defendants") have operated as a

5   common enterprise while engaging in the deceptive acts and practices and other violations of law

6   alleged in this Complaint.  Defendants have conducted the business practices described below

7   through interrelated companies that have common ownership, officers, directors, members,

8   managers, office locations, and mailing addresses, and that commingled funds.  Because these

9   Corporate Defendants have operated as a common enterprise, each of them is jointly and

10  severally liable for the acts and practices alleged below.  Further, Shell Defendants are fronts for

11  the other Corporate Defendants, and they operate primarily for the purpose of furthering the

12  common enterprise.  Defendants Harrison, Kirschbaum, Lyman, Zelig, Hoskins, Sonnenberg,

13  Hanchett, and Wickman (the "Individual Defendants") have formulated, directed, controlled, had

14  the authority to control, or participated in the acts and practices of the Corporate Defendants that

15  constitute the common enterprise.

16

17                                                      **COMMERCE**

18            47.     At all times relevant to this Complaint, Defendants have maintained a substantial

19  course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act,

20  15 U.S.C. § 44.

21

22                              **DEFENDANTS' BUSINESS PRACTICES**

23                                   **The Business Coaching Program**

24            48.     Since at least 2007, and continuing thereafter, the Defendants have engaged in, or

25  caused others to engage in, telemarketing through a plan, program or campaign to sell a

14

purported business coaching program and related services, by use of one or more telephones and involving more than one interstate call. The Defendants use or have used a variety of deceptive tactics to induce consumers to purchase their coaching program and related services.

49.    Individual Defendants Kirschbaum, Harrison, Lyman and Hoskins founded Ivy Capital in 2003. As of 2010, each of these individuals had a 25% ownership stake in Ivy Capital. All of the other Primary Defendants were established after Ivy Capital to further the common enterprise.

50.    Since at least 2007, Primary Defendants have marketed a program that will purportedly help consumers create, develop, market and run their own successful Internet business from home. Upsell Defendants market additional products and services with representations that such products and services are essential to any successful business. Even after purchasing additional products and services, however, consumers rarely, if ever, make any money as a result of the program or end up with a viable business of any kind.

51.    Primary Defendants sell their program by calling consumers who have provided their telephone number in response to an unrelated e-mail or advertisement about work-at-home or Internet business opportunities. These e-mails and advertisements come from companies such as Shawn Casey's Mining Gold Corporation, Jennifer Johnson's Home Job Placement Program, and Brent Austin's Automated Wealth System. Some of these advertisements also originate from Lead Generating Defendants, which Primary Defendants have specifically created to generate leads for themselves.

52.    During the sales calls, which can last for more than an hour, Primary Defendants' representatives make a variety of representations, often using high pressure sales tactics, to sell their business coaching program. In numerous instances, sales representatives: (a) tell consumers they have to act quickly because there are hundreds of people waiting to purchase the program and a limited number of resources; (b) describe individuals who purportedly made

millions of dollars through the program; (c) say that the purpose of the call is to identify "qualified" applicants and choose participants for a highly-selective "team;" and (d) ask consumers to describe what they will do with the promised proceeds from their Internet business.

53.    Primary Defendants' sales representatives typically do not mention Ivy Capital in the initial sales calls, but instead tell consumers they are calling on behalf of "The Success Team" or the "Internet Success Team." In numerous instances, Primary Defendants also use these names in initial e-mail correspondence and written materials they send to consumers, so many consumers do not learn for many weeks that Ivy Capital is the seller of these products and services. Ivy Capital's tactic of using fictional names often makes it difficult for consumers to research the company before they purchase the business coaching program.

54.    Primary Defendants' sales representatives make oral representations about the earnings potential of the program, either by assuring prospective purchasers that they will be able to recover their initial investment in a short period of time (typically one to three months) or by stating that purchasers typically earn from $3,000 to $10,000 per month.

55.    In numerous instances, sales representatives assure consumers that if they are willing to spend five to ten hours per week and if they are committed to following the program, they will be successful. Sales representatives make these representations without telling consumers what type of Internet business they will be starting and what they will be expected to do in connection with that business.

56.    Primary Defendants' success and earnings claims are false because the vast majority of purchasers of Primary Defendants' program are unsuccessful in establishing Internet businesses, and thus are unable to earn any money.

57.    Primary Defendants represent that they will provide all the services necessary for consumers to establish successful Internet businesses, including individual coaching sessions, online resources, and website design and development. Moreover, Primary Defendants promise

16

both orally and in writing that they will continue to provide all necessary services for six months or until purchasers recoup their initial investment.

58.     Nearly all sales of Primary Defendants' programs are credit card sales. During sales calls, consumers are asked to disclose personal financial information, including their debts and the limit on their credit cards. Sales representatives then encourage consumers to purchase the program by promising that they will soon be able to use the proceeds of their Internet business to pay back the amount charged to their credit cards.

59.     Sales representatives typically offer the programs at three price levels: "conservative," "moderate," and "aggressive," and they encourage consumers to select a level that reflects the consumers' eagerness to make money and commitment to the program. Regardless of which level consumers select, the program purportedly includes: a personal business coach; coaching sessions; unlimited e-mail support; access to webinars and articles on Primary Defendants' websites; and/or technical and web design assistance for the consumer's business website.

60.     Primary Defendants generally charge from $2,000 to more than $20,000 for their business coaching program. The exact price of the program typically depends on the amount of credit consumers have available on their credit cards.

61.     In numerous instances, after consumers authorize Primary Defendants to charge their credit cards, sales representatives send consumers an e-mail containing a link to an electronic contract. In some of those instances, sales representatives pressure consumers into signing the electronic contract during the sales call, often without giving consumers time to read the entire contract.

62.     Within days, weeks or months of purchasing the program, consumers discover that it is nearly impossible to establish a profitable Internet business, even if they work substantially more than five to ten hours a week and follow all the steps of the program. The

17

coaches provided by Primary Defendants give little or no substantive guidance.  Many of the videos included in the program package contain merely commonsense advice or inspirational stories.  Furthermore, consumers are not provided with assistance when they encounter technical or other difficulties.  While some consumers are able to start a business or establish a website despite all these issues, even these consumers have not earned any money.

### The Related Upsells

63.     Shortly after consumers purchase the program, Upsell Defendants begin calling to offer purchasers additional services allegedly designed to enhance or improve their Internet business, even though at this early stage most purchasers have not completed Primary Defendants' program and do not have an operational business in place.

64.     In numerous instances, Upsell Defendants' sales representatives call purchasers to tell them that in order for their business to succeed they should organize it as a limited liability corporation.  Sales representatives then offer consumers assistance establishing limited liability corporations.

65.     Upsell Defendants also offer packages of goods or services, including those purportedly designed to help: (a) guarantee access to corporate lines of credit; (b) provide tax-related advice and services; and (c) provide drop-shipping services.  Each of these additional packages or programs must be purchased, and the costs are substantial, ranging from $399 (for drop-shipping) to over $12,000 (for access to corporate credit).

66.     In numerous instances, to induce consumers to purchase upsell products and services, Upsell Defendants' sales representatives inform consumers that: (a) the consumer will be able to access substantial amounts of corporate credit in short periods of time; (b) they have Certified Public Accountants, lawyers and ex-IRS agents on staff to provide expert tax advice and assistance; and (c) drop-shipping services are a necessity for any Internet business.

67.     In numerous instances, Upsell Defendants fail to provide these promised goods

18

1    and services.  For example, Upsell Defendants fail to file appropriate paperwork establishing an

2    LLC, review tax returns, or even respond to phone calls from consumers seeking assistance that

3    should have been part of their package of services.

**Practices Related to Refunds**

5    68.    Defendants have a strict three-day refund policy for their programs, products and

6    services.  In numerous instances, however, sales representatives fail to disclose this policy to

7    consumers prior to purchase.  Defendants also have a policy that requires consumers to sign a

8    "non-disparagement" agreement in order to receive a refund.  The "non-disparagement"

9    agreement states that the consumer will "not provide information, make any statement orally or

10   in writing, or take any action, directly or indirectly, that would cause [Defendants]

11   embarrassment or humiliation or that could reasonably be interpreted to be disparaging of

12   [Defendants]."  Defendants also fail to disclose this requirement to consumers prior to purchase.

13   69.    In numerous instances, consumers who seek refunds after the three-day period are

14   told that they are not eligible for a refund of any kind, even if they were not informed about the

15   policy prior to purchase.  Consumers who continue to make refund requests are often berated and

16   insulted by Defendants' representatives.  Yet because Defendants rarely provide any products or

17   services in the first three days, many consumers have no way of evaluating the utility of their

18   purchase until it is too late for a refund.

19   70.    Even when consumers attempt to request a refund within three days, they

20   typically face a series of obstacles.  In some instances, consumers are unable to reach a

21   representative to make their request within the allotted time, despite leaving multiple voicemail

22   messages or sending e-mail messages.  In other instances, consumers who do manage to connect

23   with Defendants are given conflicting information as to how the refund request has to be made or

24   they are transferred to very aggressive sales representatives who try to talk them out of

25   cancelling.  In any event, Defendants routinely refuse to provide refunds to consumers, even

1    those who attempt to cancel within the three-day refund period.

2         71.    Some consumers who file repeated complaints with State and Federal agencies

3    eventually are offered partial or even full refunds, but such consumers typically have to sign the

4    "non-disparagement" agreement promising that the consumer will not take any action or make

5    any statement that humiliates, embarrasses or disparages Defendants.

6                    **Calling Telephone Numbers on the Do Not Call Registry**

7         72.    To induce consumers to purchase their services, Defendants have initiated

8    telephone calls to telephone numbers on the National Do Not Call Registry.  Defendants have

9    engaged in this behavior even after consumers have asked them to stop calling.

10        73.    Defendants have called telephone numbers in various area codes without first

11   paying the annual fee for access to the telephone numbers within such area codes that are

12   included in the National Do Not Call Registry.

13

14                         **VIOLATIONS OF THE FTC ACT**

15        74.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts

16   or practices in or affecting commerce."

17        75.    Misrepresentations or deceptive omissions of material fact constitute deceptive

18   acts or practices prohibited by Section 5(a) of the FTC Act.

19

20                **COUNT I – Misrepresentations Regarding Income**

21        76.    In numerous instances, in connection with the telemarketing and sale of their

22   business coaching program, Primary Defendants represent, directly or indirectly, expressly or by

23   implication, one of both of the following:

24             A.    consumers who purchase and use Primary Defendants' business coaching

25                  program are likely to earn thousands of dollars per month from their Internet

20

business endeavors; and

B.    within six months a purchaser's Internet business will generate income equal to or greater than the amount they paid to purchase the program.

77.    In truth and in fact, in numerous instances in which Primary Defendants make the representations set forth in Paragraph 76 of this Complaint, consumers who purchase and use Primary Defendants' business coaching program do not earn thousands of dollars per month from their Internet business endeavors, and purchasers do not recoup within six months the amount they paid to purchase the program.

78.    Therefore, Primary Defendants' representations as set forth in Paragraph 76 of this Complaint are false and misleading and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II – Misrepresentations Regarding Goods and Services Provided

79.    In numerous instances in connection with the telemarketing and sale of their business coaching program and related upsell products and services, Defendants represent, directly or indirectly, expressly or by implication, one or both of the following:

A.    Defendants will provide the services necessary for consumers to establish successful Internet businesses, including individual coaching sessions, online resources, and website design and development, for six months or until purchasers recoup their initial investment; and

B.    Defendants will provide numerous other related products and services, including access to corporate credit and tax advice and assistance.

80.    In truth and in fact, in numerous instances in which Defendants make the representations set forth in Paragraph 79 of the Complaint, Defendants fail to provide all the

21

services necessary for consumers to establish successful Internet businesses for the promised length of time and Defendants fail to provide the promised related products and services.

81.    Therefore, Defendants' representations as set forth in Paragraph 79 of this Complaint are false and misleading and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT III – Failure to Disclose Material Aspects of the Refund Policy**

82.    In numerous instances in connection with the telemarketing and sale of their business coaching program and related upsell products and services, Defendants represent, directly or indirectly, expressly or by implication, that they will provide refunds to dissatisfied consumers.

83.    In numerous instances in which Defendants have made the representations set forth in Paragraph 82, Defendants fail to disclose, or to disclose adequately, to consumers material aspects of Defendants' refund policy, including one or both of the following:

    A.    consumers must request a refund within three days of purchase; and
    B.    consumers must sign a "non-disparagement" agreement in order to receive a refund.

84.    In light of the representations set forth in Paragraph 82 above, Defendants' failure to disclose or to disclose adequately the material information set forth in Paragraph 83 of this Complaint constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT IV – Misrepresentations Regarding Refund Policy**

85.    In numerous instances in connection with the telemarketing and sale of their business coaching program and related upsell products and services, Defendants have

22

1  represented, directly or indirectly, expressly or by implication, that consumers would receive a

2  full refund if they requested a refund within three days of their purchase.

3      86.    In truth and in fact, in numerous instances in which Defendants made the

4  representation set forth in Paragraph 85, Defendants have failed to provide refunds to consumers

5  who requested a refund within three days.

6      87.    Therefore, Defendants' representation set forth in Paragraph 85 of this Complaint

7  is false and misleading, and constitutes a deceptive act or practice in violation of Section 5(a) of

8  the FTC Act, 15 U.S.C. § 45(a).

9

10          **VIOLATIONS OF THE TELEMARKETING SALES RULE**

11     88.    Congress directed the FTC to prescribe rules prohibiting abusive and deceptive

12  telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101 – 6108,

13  which resulted in the adoption of the Telemarketing Sales Rule, 16 C.F.R. part 310.

14     89.    Defendants are "seller[s]" and "telemarketer[s]" engaged in "telemarketing," as

15  defined by the TSR, 16 C.F.R. §§ 310.2(aa), (cc), and (dd).

16     90.    The TSR prohibits sellers and telemarketers from failing to disclose, in a clear and

17  conspicuous manner, if the seller has a policy of not making refunds, a statement informing the

18  customer that this is the seller's policy; or if the seller makes a representation about a refund, a

19  statement of all material terms and conditions of such policy. 16 C.F.R. § 310.3(a)(1)(iii).

20     91.    The TSR prohibits sellers and telemarketers from misrepresenting, directly or by

21  implication, any material aspect of the performance, efficacy, nature, or central characteristics of

22  goods or services that are the subject of a sales offer. 16 C.F.R. § 310.3(a)(2)(iii).

23     92.    The TSR prohibits sellers and telemarketers from misrepresenting, directly or by

24  implication, any material aspect of the nature or terms of the seller's refund, cancellation,

25  exchange, or repurchase policies. 16 C.F.R. § 310.3(a)(2)(iv).

93.    The TSR prohibits telemarketers from initiating any outbound calls to a person when that person's telephone number is on the Do Not Call Registry.  16 C.F.R. § 310.4(b)(1)(iii)(B).

94.    The TSR also prohibits sellers and telemarketers from initiating outbound telephone calls to any person whose telephone number is within a given area code unless the seller or telemarketer, either directly or through another person, first has paid the annual fee for access to the telephone numbers within that area code.  16 C.F.R. § 310.8.

95.    Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT V – Misrepresentations Regarding the Performance, Efficacy, Nature or Essential Characteristics of Goods and Services

96.    In numerous instances, in connection with telemarketing offers to sell their business coaching program and related upsell products and services, Defendants have, directly or by implication, made misrepresentations regarding the performance, efficacy, nature or essential characteristics of their products and services, such as:

     A.    consumers who purchase and use Defendants' products and services are likely to earn thousands of dollars per month from their Internet business endeavors;

     B.    within six months a purchaser's Internet business will generate income equal to or greater than the amount they paid to purchase the program;

     C.    Defendants will provide all the services necessary for consumers to establish successful Internet businesses, including individual coaching sessions, online resources, and website design and development, for six months or until

purchasers recoup their initial investment; and

    D.    Defendants will provide numerous other related products and services, including access to corporate credit and tax advice and assistance.

97.    In truth and in fact:

    A.    consumers who purchase and use Defendants' products and services do not earn thousands of dollars per month from their Internet business endeavors;

    B.    within six months purchasers of Defendants' products and services do not generate income equal to or greater than the amount they paid to purchase the program;

    C.    Defendants fail to provide all the services necessary for consumers to establish successful Internet businesses for the promised length of time; and

    D.    Defendants fail to provide the promised related products and services.

98.    The Defendants' practices as alleged in Paragraph 96 thereby constitute deceptive telemarketing acts or practices that violate Section 310.3(a)(2)(iii) of the TSR, 16 C.F.R. § 310.3(a)(2)(iii).

## COUNT VI – Failure to Disclose Material Aspects of the Refund Policy

99.    In numerous instances in connection with the telemarketing and sale of their business coaching program and related upsell products and services, Defendants represent, directly or by implication, that Defendants will provide refunds to dissatisfied consumers.

100.    In numerous instances in which Defendants have made the representation set forth in Paragraph 99, Defendants fail to disclose, or to disclose adequately, in a clear and conspicuous manner, all material terms and conditions of Defendants' refund policy, including one or both of the following:

    A.    consumers must request a refund within three days of purchase; and

          B.       consumers must sign a "non-disparagement" agreement in order to receive a

                  refund.

101.    In light of the representation set forth in Paragraph 99 above, Defendants' failure to disclose or to disclose adequately the material information set forth in Paragraph 100 is a deceptive telemarketing practice that violates Section 310.3(a)(1)(iii) of the TSR, 16 C.F.R. § 310.3(a)(1)(iii).

## COUNT VII – Misrepresentations Regarding Material Aspects of the Refund Policy

102.    In numerous instances, Defendants have misrepresented, directly or by implication, in the sale of their business coaching program and related upsell products and services, material aspects of the nature and terms of Defendants policy by assuring consumers that they would be able to receive a full refund if they requested a refund within three days of their purchase.

103.    In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 102, Defendants have failed to provide refunds to consumers who requested a refund within three days.

104.    The Defendants' practice as alleged in Paragraph 102 is a deceptive telemarketing practice that violates Section 310.3(a)(2)(iv) of the TSR, 16 C.F.R. § 310.3(a)(2)(iv).

## COUNT VIII – Calling Telephone Numbers on the National Do Not Call Registry

105.    In numerous instances, in connection with telemarketing offers to sell their business coaching program, Defendants initiated, or caused others to initiate, an outbound telephone call to a person's telephone number on the National Do Not Call Registry in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B). Defendants have engaged in this behavior even after consumers have asked them to stop calling.

106.    Defendants' practice as alleged in Paragraph 105 is an abusive telemarketing

1  practice that violates Section 310.4(b)(1)(iii)(B) of the TSR, 16 CFR § 310.4(b)(1)(iii)(B).

2

3  **COUNT IX – Failing to Pay the Fee for Access to the National Do Not Call Registry**

4  107.    In numerous instances, in connection with telemarketing offers to sell their

5  business coaching program, Defendants have initiated outbound telephone calls to telephone

6  numbers on the Do Not Call Registry without paying the annual fee for access to telephone

7  numbers that are included in the National Do Not Call Registry.

8  108.    Defendants' practice as alleged in Paragraph 107 is an abusive telemarketing

9  practice that violates Section 310.8 of the TSR, 16 CFR § 310.8.

10

11  **Count X – Relief Defendants**

12  109.    Relief Defendants Cherrytree, Oxford Financial, S&T Time, Virtucon, Curva,

13  Mowab, Kierston Kirschbaum, Melyna Harrison, Tracy Lyman, and Leanne Hoskins have

14  received, directly or indirectly, funds, other assets, or both, from Defendants that are traceable to

15  funds obtained from Defendants' customers through the unlawful acts or practices described

16  herein.

17  110.    Relief Defendants are not bona fide purchasers with legal and equitable title to

18  Defendants' customers' funds, other assets, or both, and Relief Defendants will be unjustly

19  enriched if they are not required to disgorge the funds or the value of the benefit they received as

20  a result of Defendants' unlawful acts or practices.

21  111.    By reason of the foregoing, Relief Defendants hold funds and assets in

22  constructive trust for the benefit of Defendants' customers.

23

24  **CONSUMER INJURY**

25  112.    Consumers have suffered and will continue to suffer substantial injury as a result

27

of Defendants' violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a) and the TSR, as set forth above. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

### THIS COURT'S POWER TO GRANT RELIEF

113.    Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of the FTC Act. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

114.    Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the TSR, including recession and reformation of contracts, and the refund of money.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Federal Trade Commission, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. § 53(b) and 57b, and Section 6(d) of the Telemarketing Act, 15 U.S.C. § 6105(b), and the Court's own equitable powers, requests that the Court:

1.    Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, a temporary

1    restraining order, a preliminary injunction, an order freezing assets, immediate access to the

2    Defendants' business premises, and appointment of a receiver;

3         2.    Enter a permanent injunction to prevent future violations by Defendants of the

4    FTC Act, the Telemarketing Act, and the TSR;

5         3.    Award such relief as the Court finds necessary to redress injury to consumers

6    resulting from the Defendants' violations of the FTC Act, the Telemarketing Act and the TSR,

7    including, but not limited to, rescission or reformation of contracts, restitution, the refund of

8    monies paid, and the disgorgement of ill-gotten monies;

9         4.    Enter an order requiring Relief Defendants to disgorge all funds and assets, or the

10   value of the benefit they have received from the funds and assets, which are traceable to

11   Defendants' unlawful acts or practices; and

12        5.    Award Plaintiff the costs of bringing this action, as well as such other and

13   additional relief that the Court may determine to be just and proper.

14

15

16   Dated: February 22, 2011                    Respectfully submitted,

17

18                                               WILLARD K. TOM
                                                 General Counsel
19

20                                               *Emily Cope Burton*
                                                 EMILY COPE BURTON
21                                               SHAMEKA L. GAINEY

22                                               Attorneys for Plaintiff
                                                 Federal Trade Commission
23

24

25