UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>  Plaintiff,<br><br>v.<br><br>IVY CAPITAL, INC., et al.,<br><br>  Defendants. | 2:11-CV-283 JCM (GWF) |

**ORDER**

Presently before the court is plaintiff Federal Trade Commission's ("FTC") motion to strike affirmative defenses numbers eight and ten defendants Zelig's, Zyzac's and Curva's first amended answer to the complaint. (Doc. #170). The defendants have responded (doc. #180), and the FTC has replied (doc. #191).

Also before the court is the receiver Robb Evans' motion for order granting the receiver's recommendation that receivership defendant The Shipper, LLC, d.b.a. Wholesalematch.com be permitted to resume limited business operations. (Doc. #171). The FTC has responded (doc. #188), the defendants Fortune Learning, LLC, James Hanchett, Steven Sonnenberg, and The Shipper, LLC, have replied (d0c. #192). The receiver has also filed a reply. (Doc. #194).

**I.     Motion to Strike Affirmative Defenses**

Federal Rule of Civil Procedure 12(f) allows the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." The function

**James C. Mahan**
**U.S. District Judge**

of a motion to strike pursuant to Rule 12(f) is avoidance of "the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial[.]" *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1994), *rev'd on other grounds*, 510 U.S. 517 (1994) (internal quotations omitted).

Plaintiffs urge the court to apply Rule 12(f) to strike two affirmative defenses found in the Zelig/Zyzac defendants' amended answer. The FTC alleges that the defenses are invalid as a matter of law and are unfounded. Whereas their presence in the case will purportedly confuse the issues before the court, complicate and delay the proceedings, and unnecessarily raise the costs of discovery and trial, the FTC requests the two defenses be stricken. Alternatively, the FTC argues that the claims have not been sufficiently pled under Rule 8 because they are conclusory and unsupported by the asserted facts. *See FDIC v. Modular Homes, Inc.*, 859 F. Supp. 117, 121 (D.N.J. 1994) (finding an affirmative defense insufficiently pled where it includes nothing more than "bare bones conclusory allegations").

### A. Eighth Defense - First Amendment

The eighth affirmative defense alleges that the answering defendants' conduct was "privileged under the First Amendment to the United States Constitution." (Doc. #151 at 10). The FTC argues that this is not actually an affirmative defense, because assuming the allegations in the complaint are true, it would not be viable. *See U.S. v. Schiff*, 379 F.3d 621, 629–30 (9th Cir. 2004) (holding that false or misleading commercial speech is not constitutionally protected). A proper affirmative defense would be viable even if all the allegations in the complaint were taken as true. *See FTC v. Stefanchik*, 2004 WL 5495267, at *2 (W.D. Wash. Nov. 12, 2004) (striking purported First Amendment defense because it would fail as a matter of law should all the facts alleged in the complaint be found true).

The defendants argue in response that the defense should not be stricken because there may be some set of facts that support the claim that the defendants' conduct was protected by the First

1  Amendment. *See, e.g., FTC v. Bronson Partners, LLC*, 2006 WL 197357, at *2 (D. Conn. 2006)
2  (denying a motion to strike such a defense because there may be some set of facts to support it).
3  Additionally, defendants note that the First Amendment places limits on the remedies available to
4  the FTC for violations of the FTC Act. *See Beneficial Corp. v FTC*, 542 F.2d 611, 619 (3d Cir. 1976)
5  (holding that the remedy for commercial speech violations of the law can go only go so far as to
6  accomplish the remedial objective of preventing the violation). Thus, the First Amendment may be
7  relevant as it relates to the relief sought.

8  Whereas the court agrees that the First Amendment argument may be relevant to the
9  disposition of the case, and whereas the court sees no harm in allowing the defense to remain in the
10 answer, the motion to strike is denied as to the eighth affirmative defense.

12  B.   Tenth Defense - Statute of Limitations

14  A defendant may not assert a statute of limitations defense against the United States
15 government unless the statute in question contains an express limitations period. *U.S. v. Dos*
16 *Cabezas Corp.*, 995 F.2d 1486, 1489 (9th Cir. 1993). As the FTC notes, Section 13(b) of the Federal
17 Trade Commission Act specifies no statute of limitations period; rather, the express language of that
18 section dictates that the FTC may bring suit whenever it has reason to believe that a violation has
19 occurred. 15 U.S.C. § 53(b).

20  Additionally, the three-year limitations period for claims under Section 19 of the Federal
21 Trade Commission Act does not limit the relief sough here, where the FTC has alleged claims under
22 both Sections 13(b) and 19. *See* 15. U.S.C. § 57b(e) ("Nothing in this section shall be construed to
23 affect any authority of the Commission under any other provision of law."); *U.S. v. Building*
24 *Inspector of Am., Inc.*, 894 F. Supp. 507, 514 (D. Mass. 1995) (holding that nothing in Section 19
25 limits other civil actions by the government against violators of the FTC Act).

26  Accordingly, the court grants the FTC's motion to strike the tenth affirmative defense,
27 because the defendants have failed to cite any authority indicating that any statute of limitations

**James C. Mahan**
**U.S. District Judge**

- 3 -

period applies or that any applicable date has passed.

## II. Motion to Grant Receiver's Recommendation

The Receiver, Robb Evans & Associates LLC, brings this motion for an order allowing receivership defendant The Shipper, LLC d.b.a. Wholesalematch.com to resume limited business operations. The receiver has outlined the history and business operations of this company, noting that Wholesalematch has presented data indicating that approximately two-thirds of its customers in 2011 were non-Ivy Capital consumers. The receiver contends that resumption of business in this context is reasonable and beneficial, as any income generated through this process may be available to any judgment obtained by the plaintiff to ultimately benefit consumers.

Accordingly, the receiver proposed that Wholesalematch be permitted to "resume operations utilizing funds from one or more third party investors, none of whom are defendants in the subject action or are directly or indirectly related to or affiliated with any defendants in the subject action." (Doc. #171 at 3:11–14). The receiver also recommends seven safeguards:

(1) Wholesalematch has advised the [r]eceiver that it has established a separate CRM [consumer relationship management database] for its non-Ivy Capital consumers on a server other than the server previously used by Ivy Capital. Wholesalematch will provide the [r]eceiver with the non-Ivy Capital CRM database in order that the [r]eceiver can confirm that Wholesalematch's non-Ivy Capital consumers have been segregated from the Ivy Capital consumers.

(2) Wholesalematch must demonstrate to the [r]eceiver that the Ivy Capital CRM database has been deleted in its entirety except for retaining the names, mailing addresses, and e-mail addresses of the Ivy Capital consumers. Wholesalematch further must demonstrate to the [r]eceiver that it has created a program which will

**James C. Mahan**
**U.S. District Judge**

- 4 -

automatically scrub new Wholesalematch consumers against the Ivy Capital list of consumers and which will automatically reject any consumer who is on the Ivy Capital consumer list. This prevents any services, billings, or contacts by Wholesalematch to Ivy Capital consumers.

(3) Wholesalematch must provide to the [r]eceiver, on a monthly basis, a DVD of its then-current CRM database in order that the [r]eceiver can monitor compliance and be assured that no Ivy Capital consumers are being serviced, billed or contacted by Wholesalematch.

(4) The [r]eceiver is permitted to make unscheduled, unannounced inspections of the business operations of Wholesalematch, wherever those operations are conducted, during normal business hours, for the purpose of assuring that Wholesalematch is complying with these restrictions against the servicing, billing or contacting of Ivy Capital consumers.

(5) If at any time the [r]eceiver, in its sole and absolute opinion, determines that Wholesalematch is in violation of these guidelines, it may instruct Wholesalematch to immediately terminate its operations and Wholesalematch must do so until or unless Wholesalematch obtains a Court order permitting the resumption of operations.

(6) After the inception of the receivership, the [r]eceiver took steps to disable web sites related to Ivy Capital and Wholesalematch, as well as the web sites of consumers solicited by the [r]eceivership [d]efendants. This involved disabling web sites with the web sites' registrars, e.g. godaddy.com, as well as disabling web sites with the colocation facilities that hosted the web sites, e.g Fibernet. In order to permit

**James C. Mahan**
**U.S. District Judge**

        Wholesalematch to resume its business operations, Wholesalematch will provide the [r]eceiver with the names of all of its non-Ivy Capital consumers that have web sites, together with the registrar for each web site domain name and the colocation facility hosting each web site, in order that the Receiver can verify that only non-Ivy Capital consumer web sites are restored. Additionally, Wholesalematch's domain name may be reacquired from godaddy.com, thereby allowing Wholesalematch to restore its own web site.

(7)    Finally, in order to prevent the receivership estate from incurring any administrative expense liability in connection with the limited resumption of operations by Wholesalematch, all pre-receivership contracts in the name of Wholesalematch, whether with registrars, colocation facilities or any other vendors, to the extent such contracts are reestablished or restored, shall be reestablished or restored under a new account number. Further, the order granting this motion shall expressly provide that no expense incurred or to be incurred by Wholesalematch during the pendency of the receivership estate shall be deemed to be an administrative expense or otherwise create any liability for the [r]eceiver or the receivership estate whatsoever.

(Doc. #171 at 3:19–5:14).[1]

However, the FTC has responded to the receiver's motion and opposes the resumption of business by Wholesalematch. Specifically, the FTC argues that the motion is "premature and speculative given that the receiver's recommendation hinges on funds from one or more third party investors, yet defendants have failed to identify a single eligible investor." (Doc. #188 at 2:2–5) (internal quotations omitted). Thus, the receiver has failed to show that Wholesalematch can and will

---

[1] The conditions have been quoted from the receiver's recommendation (doc. #171). The court admonishes the parties to capitalize only proper nouns, in accordance with the ordinary rules of grammar. Designations such as "receiver" and "defendant" that are not the name of a person, place or thing shall not be capitalized in orders issued by this court.

James C. Mahan
U.S. District Judge

- 6 -

be operated legally and profitably as required by the preliminary injunction.

The court agrees with the FTC. The motion is premature and will remain so until (1) the defendants have identified eligible investors; (2) the receiver has vetted the proposed investors to ensure that they meet the prerequisites set forth in the motion and are otherwise suitable; and (3) the court and the FTC have had a similar opportunity to evaluate the investors.

Additionally, the receiver's recommendation does not comply with Section XII.L of the preliminary injunction, which requires the suspension of all business operations unless they can be continued legally and profitably. (Doc. #91 at 20). The court agrees with the FTC in concluding that none of the limitations proposed by the receiver restrict Wholesalematch's sales practices, nor do they establish a monitoring system to ensure compliance with federal laws. Specifically, the recommendation proposes no checks to ensure that Wholesalematch abandons the use of its misleading scripts or complies with the Do Not Call Registry rules.

Finally, Section XII.L of the preliminary injunction requires the receiver to suspend business operations if such operations cannot be continued profitably. The court agrees with the FTC that the receiver has focused exclusively on the purported absence of cost to the receivership estate, rather than focusing on its potential profitability. Thus, the court is inclined to deny the receiver's request at this time.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff's motion to strike (doc. #170) be, and the same hereby is, GRANTED in part and DENIED in part as per the analysis set forth in the body of this order;

IT IS FURTHER ORDERED that the receiver's motion for an order granting receiver's recommendation (doc. #171) be, and the same hereby is, DENIED.

DATED June 20, 2011.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 7 -