**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) Case No. 2:11-cv-00283-JCM-<br>) GWF |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **FINAL JUDGMENT AND** |
| IVY CAPITAL, INC., *et al.*, | ) **ORDER FOR PERMANENT** |
| | ) **INJUNCTION AND** |
|     Defendants, and | ) **MONETARY RELIEF** |
| | ) |
| CHERRYTREE HOLDINGS, LLC, *et al.*, | ) |
| | ) |
|     Relief Defendants. | ) |
| | ) |
| | ) |
| | ) |

Plaintiff, Federal Trade Commission (the "FTC" or the "commission"), filed a complaint for permanent injunction and other equitable relief, including redress to consumers and disgorgement of ill-gotten gains (the "complaint"), pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act (the "FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud Abuse Prevention Act (the "Telemarketing Act"), 15 U.S.C. §§ 6101-6108. Defendants Business Development Division, LLC ("BDD"), Corporate Credit Division, LLC ("CCD"), Credit Repair Division, LLC ("CRD"), Nevada Corporate Division, Inc. ("NCD"), and Tax Planning Division, LLC ("TPD") have each defaulted (doc. no. 152). The FTC has filed an application for default judgment as to these five defendants pursuant to Rule 55(b) of the Federal Rules of Civil Procedure.

Having considered the default judgment application and being otherwise fully advised, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the FTC's application for default judgment is **GRANTED**. The court enters the following final judgment and order for permanent injunction and monetary relief as to defendants BDD, CCD, CRD, NCD, and TPD.

## **BACKGROUND**

1. This is an action by the commission instituted under Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing Act, 15 U.S.C. §§ 6101-6108.  The commission has authority to seek the relief contained herein;

2. The commission's complaint states a claim upon which relief may be granted under Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FTC's trade regulation rule entitled the Telemarketing Sales Rule (the "TSR"), 16 C.F.R. Part 310;

3. This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, 15 U.S.C. §§ 45(a), 53(b), 57b, 6102(c), and 6105(b);

4. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c), and 15 U.S.C. § 53(b);

5. The activities of BDD, CCD, CRD, NCD, and TPD (collectively, the "defaulted defendants") as alleged in the commission's complaint are in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44;

6. The clerk of court entered a notice of default for the defaulted defendants on April 4, 2011;

7. None of the defaulted defendants is a minor or incompetent person;

8. None of the defaulted defendants has appeared in this action;

9. None of the known officers of the defaulted defendants is a member of the armed services;

10. By virtue of the court's decision regarding the FTC's motion for default judgment, the defaulted defendants are liable for injunctive and equitable monetary relief for violations of Section 5(a) of the FTC Act and the TSR;

**11.** No hearing is necessary for the court to make a determination with respect to equitable monetary relief, as the consumer injury is established through undisputed evidence already submitted to the court;

**12.** Entry of this order is in the public interest.

## DEFINITIONS

For the purpose of this order, the following definitions shall apply:

**1.** "**And**" and "**or**" shall be understood to have both conjunctive and disjunctive meanings.

**2.** "**Asset**" means any legal or equitable interest in, right to, or claim to, any real, personal, or intellectual property including, but not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares or stock, securities, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), cash, trusts, including but not limited to asset protection trusts, and reserve funds or other accounts associated with any payments processed on behalf of any defendant or relief defendant, including, but not limited to, such reserve funds held by a payment processor, credit card processor, or bank.

**3.** "**Assisting others**" includes, but is not limited to, providing any of the following goods or services to another entity:  (1) performing customer service functions, including, but not limited to, charging consumers for products or services, or receiving or responding to consumer complaints; (2) drafting or providing, or arranging for the drafting or provision of, any promotional material; (3) providing names of, or assisting in the generation of, potential customers; or (4) performing

promotional or marketing services of any kind, or recruiting affiliates; or (5)

processing credit and debit card payments.

4. "**Business coaching program**" means any program, plan, product, or service,

including, but not limited to, those related to work-at-home opportunities, that is

represented, expressly or by implication, to train or teach a participant or purchaser

how to establish a business or earn money or other consideration through a business.

"Business coaching" shall not include providing services other than training or

teaching, including, but not limited to, website design and search engine optimization.

5. "**Defaulted defendants**" means Defendants Business Development Division, LLC,

Corporate Credit Division, LLC ("CCD"), Credit Repair Division, LLC ("CRD"),

Nevada Corporate Division, Inc. ("NCD"), and Tax Planning Division, LLC ("TPD")

successors, assigns, affiliates, or subsidiaries.

6. "**Defendants**" mean the individual defendant and the corporate defendant,

individually, collectively, or in any combination.

7. "**Document**" is synonymous in meaning and equal in scope to the usage of the term

in the Federal Rules of Civil Procedure 34(a), and includes writing, drawings, graphs,

charts, Internet sites, Web pages, Web sites, electronic correspondence, including e-

mail and instant messages, photographs, audio and video recordings, contracts,

accounting data, advertisements (including, but not limited to, advertisements placed

on the World Wide Web), FTP Logs, Server Access Logs, USENET Newsgroup

postings, World Wide Web pages, books, written or printed records, handwritten

notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business

canceled checks and check registers, bank statements, appointment books, computer

records, and other data compilations from which information can be obtained and

translated, if necessary, through detection devices into reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of the term.

8. "**Material**" means likely to affect a person's choice of, or conduct regarding, goods or services.

9. "**Non-disparagement a**g**reement**" means any contract or agreement that purports to prohibit purchasers from providing information, making statements, or otherwise communicating in any way about their experiences with any business coaching program or related goods and services, including but not limited to providing information to state, federal or non-governmental entities, filing complaints with any consumer protection entity, and engaging in discussions with other consumers through online forums or any other means.

10. "**Person**" means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, government or governmental subdivision or agency, or any other group or combination acting as an entity.

11. The "**commission**" or the "**FTC**" means the Federal Trade Commission.

12. "**Relief defendants**" means Leanne Hoskins, Dream Financial and Mowab, together with their successors, assigns, affiliates, or subsidiaries.

13. "**Representatives**" means defendants' officers, agents, servants, employees, and attorneys, and any other person or entity in active concert or participation with defendants who receives actual notice of this order by personal service or otherwise.

14. "**Telemarketing**" means any plan, program or campaign (whether or not covered by the TSR, 16 C.F.R. Part 310) that is conducted to induce the purchase of goods or services by means of the use of one or more telephones.

# **ORDER**

## I.
### BAN ON MARKETING OR SALE OF
### BUSINESS COACHING PROGRAMS

**IT IS THEREFORE ORDERED** that the defaulted defendants, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate, independent contractor, accountant, financial advisor, or other device, are **hereby permanently restrained and enjoined from**:

    **A.** Advertising, marketing, promoting, offering for sale, or selling any business coaching program; and

    **B.** Assisting others engaged in advertising, marketing, promoting, offering for sale, or selling any business coaching program.

## II.
### BAN ON TELEMARKETING

**IT IS FURTHER ORDERED** that the defaulted defendants, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate, independent contractor, accountant, financial advisor, or other device, are **hereby permanently restrained and enjoined** from engaging or participating in telemarketing, or assisting others who are engaging or participating in telemarketing.

## III.
### PROHIBITED MISREPRESENTATIONS
### AND OTHER CONDUCT PROHIBITIONS

**IT IS FURTHER ORDERED** that the defaulted defendants and their representatives, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate, independent contractor, accountant, financial advisor, or other device, are **hereby permanently restrained and enjoined from**:

**A.** Making, or assisting others in making, directly or by implication, any false or misleading statement or representation of material fact, including, but not limited to: any false or misleading statement that defendants or any other individual or entity will provide a refund to consumers who request one within a specified time period;

**B.** Failing to disclose, or to disclose adequately, to consumers material aspects of any refund policy; and

**C.** Requiring consumers to sign a non-disparagement agreement as a condition of receiving a refund.

### IV.
### EQUITABLE MONETARY RELIEF

**IT IS FURTHER ORDERED** that judgment is hereby entered in favor of the commission and against the defaulted defendants, jointly and severally with all other defendants found liable in this case, in the amount of one hundred thirty million, three hundred seventy-five thousand, fifty-seven dollars and fifty-two cents ($130,375,057.52), plus prejudgment interest in the amount of three million, five hundred eighty-nine thousand, four hundred twenty-six dollars and ninety-two cents ($3,589,426.92), as equitable monetary relief for consumer injury.

### V.
### PROHIBITION ON RELEASE OF
### CUSTOMER INFORMATION OR CUSTOMER LISTS

**IT IS FURTHER ORDERED** that the defaulted defendants and their representatives, whether acting directly or through any corporation, partnership, subsidiary, division, agent, or other device, are permanently restrained and enjoined from:

**A.** Disclosing, using, or benefitting from customer information, including the name, address, telephone number, e-mail address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), of any person that the defaulted defendants obtained

prior to entry of this order in connection with the advertisement, marketing, promotion, offering for sale, or sale of any business coaching programs; and

**B.** Failing to dispose of such customer information in all forms in their possession, custody, or control within thirty (30) days after entry of this order.  Disposal shall be by means that protect against unauthorized access to the customer information, such as by burning, pulverizing, or shredding any papers, and by erasing or destroying any electronic media, to ensure that the customer information cannot practicably be read or reconstructed.

*Provided, however*, that customer information need not be disposed of if currently under the control of the commission or the court-appointed receiver.  Further, such information may be disclosed, to the extent requested by a government agency or required by a law, regulation, or court order.

## VI.
## ASSET FREEZE

**IT IS FURTHER ORDERED** that the freeze of the defaulted defendants' assets set forth in the preliminary injunction, entered by this court on March 25, 2011, shall remain in place until further order of court and shall only be lifted as is necessary to effect the turnover of the defaulted defendants' assets in partial satisfaction of the equitable monetary relief provisions set forth in section IV of this order.

## VII.
## APPOINTMENT OF RECEIVER TO WIND DOWN
## CORPORATE DEFENDANT AND LIQUIDATE ASSETS

**IT IS FURTHER ORDERED** that Robb Evans & Associates, LLC, the receiver appointed by prior orders of this court, is hereby appointed receiver for the defaulted defendants for the purpose of taking the necessary steps to wind down the business of the defaulted defendants, liquidate its assets, and pay any net proceeds to the FTC to satisfy the monetary

judgment in this order.  In carrying out these duties, the receiver shall be the agent of this court, shall be accountable directly to this court, and is authorized and directed to:

**A.** Take any and all steps that the receiver concludes are appropriate to wind down the defaulted defendants;

**B.** Continue to exercise full control over the defaulted defendants and continue to collect, marshal, and take custody, control, and possession of all the funds, property, premises, accounts, documents, mail, and other assets of, or in the possession or under the control of the defaulted defendants, wherever situated, the income and profits therefrom, and all sums of money now or hereafter due or owing to the defaulted defendants, with full power to collect, receive, and take possession of all goods, chattels, rights, credits, monies, effects, lands, leases, books and records, limited partnership records, work papers, and records of accounts, including computer-maintained information, contracts, financial records, monies on hand in banks and other financial institutions, and other papers and documents of other individuals, partnerships, or corporations whose interests are now held by or under the direction, possession, custody, or control of the defaulted defendants ("receivership estate");

**C.** Continue to have full control over the management and personnel of the defaulted defendants, including the authority to remove, as the receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of these defendants from control of, management of, or participation in, the affairs of these defendants;

**D.** Take all steps necessary or advisable, including issuing subpoenas, to locate and liquidate all other assets of the defaulted defendants, cancel the defaulted defendants' contracts, collect on amounts owed to the defaulted defendants, and take such other steps as may be necessary to wind-down, terminate, and dissolve the defaulted defendants efficiently;

**E.** Take all steps necessary or advisable, including issuing subpoenas, to identify the name, address, telephone number, date of purchase, program or product purchased, total amount paid, amount of any full or partial refund or chargeback, and payment information for consumers who were charged by the defaulted defendants, and provide the FTC, upon request, with any customer records or other business records of the defaulted defendants;

**F.** Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this order. The receiver shall apply to the court for prior approval of any payment of any debt or obligation incurred by the defaulted defendants prior to the date of entry of the temporary restraining order in this action, except payments that the receiver deems necessary or advisable to secure and liquidate assets of the defaulted defendants, such as rental payments or payment of liens;

**G.** Continue to perform all acts necessary or advisable to complete an accounting of the receivership assets, and prevent unauthorized transfer, withdrawal, or misapplication of assets;

**H.** Continue to maintain accurate records of all receipts and expenditures that the firm makes as receiver;

**I.** Enter into contracts and purchase insurance as advisable or necessary;

**J.** Continue to defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the receiver in the firm's role as receiver, or against the defaulted defendants, as the receiver deems necessary and advisable to carry out the receiver's mandate under this order;

**K.** Continue to institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts or arbitration proceedings

as the receiver deems necessary and advisable to carry out the receiver's mandate under this order;

**L.** Continue to maintain bank accounts created as designated depositories for funds of the defaulted defendants, and make all payments and disbursements from the receivership estate from such an account;

**M.** Continue to perform all incidental acts that the receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

**N.** Continue to cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency;

**O.** Dispose of, or arrange for the disposal of, the records of the defaulted defendants no later than six months after the court's approval of the receiver's final report as to the receivership estate, except that:

    **1.** to the extent that such records are reasonably available, the receiver shall arrange for records sufficient to ascertain the funds that an individual consumer paid to the defaulted defendants and any refunds provided to individual consumers, to be retained for a minimum of one year from the entry of this order, and

    **2.** if state or local law regulating the defaulted defendants' business requires the retention of particular records for a specified period, the receiver shall arrange for such records to be disposed of after the specified period has expired.

**P.** To safeguard the privacy of consumers, records containing personal financial information shall be shredded, incinerated, or otherwise disposed of in a secure manner.  For records that must be retained, the receiver may elect to retain records in their original form or to retain photographic or electronic copies;

11

**Q.** Perform all acts necessary to protect, conserve, preserve, and prevent waste or dissipation of the defaulted defendants' assets until their sale;

**R.** Sell the defaulted defendants' assets without further order of the court;

**S.** Enter into agreements in connection with the reasonable and necessary performance of the receiver's duty to sell the defaulted defendants' assets, including, but not limited to, the retention of assistants, agents, or other professionals to assist in the sale of the these assets; and

**T.** Distribute to the commission, without further order of the court, the funds received from the sale of the defaulted defendants' assets.

**VIII.**
**COMPENSATION OF RECEIVER**

**IT IS FURTHER ORDERED** that the receiver and all personnel hired by the receiver, including counsel to the receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, in the possession or control of, or which may be received by, the defendants. The receiver shall apply to the court for approval of specific amounts of compensation and expenses, and must not increase the hourly rates used as the bases for such fee applications without prior approval of the court.

**IX.**
**RECEIVER'S FINAL REPORT AND DISBURSEMENT**

**IT IS FURTHER ORDERED** that:

**A.** The receiver shall, as directed in Section VII of this order, liquidate the assets of the defaulted defendants as soon as practicable.  No later than sixty (60) days from the date of the entry of this order, the receiver shall file and serve on the parties a report (the "final report") to the court that details the steps taken to dissolve the receivership estate. The final report must include an accounting of the receivership estate's finances and total

assets and a description of what other actions, if any, must be taken to wind down the defaulted defendants.

**B.** The receiver shall mail copies of the final report to all known creditors of the defaulted defendants with a notice stating that any objections to paying any assets of the defaulted defendants to satisfy the receiver's costs and expenses and the monetary judgment set forth in this order must be submitted to the court and served by mail upon the receiver and the parties within thirty (30) days of the mailing of the final report.

**C.** No later than thirty (30) days after submission of the final report, the receiver shall file an application for payment of compensation and expenses associated with his performance of his duties as receiver.

**D.** The court will review the final report and any objections to the report and, absent a valid objection, will issue an order directing that the receiver:

　　**1.** pay the reasonable costs and expenses of administering the receivership estate, including compensation of the receiver and the receiver's personnel authorized by Section VII of this order or other orders of this court and the actual out-of-pocket costs incurred by the receiver in carrying out his duties; and

　　**2.** pay all remaining funds to the FTC or its designated agent to reduce the monetary judgment in Section IV.

**E.** If subsequent actions (such as the completion of tax returns or further actions to recover funds for the receivership estate) are appropriate, the receiver shall file an additional report or reports (the "supplemental reports") describing the subsequent actions and a subsequent application for the payment of fees and expenses related to the subsequent acts.

**F.** With court approval, the receiver may hold back funds for a specified period as a reserve to cover additional fees and costs related to actions to be addressed in a supplemental

report.  If the receiver does not make a supplemental application for fees and expenses within the specified period, or if funds remain in the reserve fund after the payment of fees and expenses approved by the court in response to such a supplemental application, all funds in the reserve funds shall be immediately paid to the FTC or its designated agent.

## X.
## ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that the defaulted defendants obtain acknowledgments of receipt of this order:

**A.** Within seven (7) days of entry of this order, each defaulted defendant must submit to the commission an acknowledgment of receipt of this order sworn under penalty of perjury.

**B.** For twenty (20) years after entry of this order, the defaulted defendants, must deliver a copy of this order to: (1) all principals, officers, directors, and managers and (2) any business entity resulting from any change in structure as set forth in Section XI, below. Delivery must occur within seven (7) days of entry of this order for current personnel. To all others, delivery must occur before they assume their responsibilities.

**C.** From each individual or entity to which a defaulted defendant delivered a copy of this order, that defaulted defendant must obtain, within thirty (30) days, a signed and dated acknowledgement of receipt of this order.

## XI.
## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that the defaulted defendants make timely submissions to the commission:

**A.** One (1) year after entry of this order, the defaulted defendants must submit a compliance report, sworn under penalty of perjury. The defaulted defendants must:

(a) designate at least one telephone number and an email, physical, and postal address

as points of contact, which representatives of the commission may use to communicate with the defaulted defendants; (b) identify all of that defaulted defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the products and services offered, the means of advertising, marketing, and sales, and the involvement of any other defaulted defendant; (d) describe in detail whether and how that defaulted defendant is in compliance with each section of this order; and (e) provide a copy of each order acknowledgment obtained pursuant to this order, unless previously submitted to the commission.

**B.** For twenty (20) years following entry of this order, the defaulted defendants must submit a compliance notice, sworn under penalty of perjury, within fourteen (14) days of any change in the following: The defaulted defendants must report any change in: (a) any designated point of contact; or (b) the structure of the defaulted defendant or any entity that the defaulted defendant has any ownership interest in or directly or indirectly controls that may affect compliance obligations arising under this order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this order.

**C.** Each defaulted defendant must submit to the commission notice of the filing of any bankruptcy petition, insolvency proceeding, or any similar proceeding by or against such defaulted defendant within fourteen (14) days of its filing.

**D.** Any submission to the commission required by this order to be sworn under penalty of perjury must be true and accurate and comply with 18 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on:_____" and supplying the date, signatory's full name, title (if applicable), and signature.

**E.** Unless otherwise directed by a commission representative in writing, all submissions to the commission pursuant to this order must be e-mailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. Ivy Capital, Inc., et al. (X110017).

**XII.**
**RECORDKEEPING**

**IT IS FURTHER ORDERED** that the defaulted defendants must create certain records for ten (10) years after entry of the order, and retain each such record for five (5) years. Specifically, any business in which any defaulted defendant, individually or collectively with any other defendant named in the complaint, is a majority owner or directly or indirectly controls, must maintain the following records:

**A.** Accounting records showing the revenues from all goods or services sold, all costs incurred in generating those revenues, and the resulting net profit or loss;

**B.** Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name, addresses, and telephone numbers; job title or position; dates of service; and, if applicable, the reason for termination;

**C.** Customer files showing the names, addresses, telephone numbers, dollar amounts paid, and the quantity and description of goods or services purchased;

**D.** Complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

**E.** All records necessary to demonstrate full compliance with each provision of this order, including all submissions to the commission; and

**F.** A copy of each advertisement or other marketing material.

### XIII.
### COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring the defaulted defendants' compliance with this order, including any failure to transfer any assets as required by this order:

A.  Within fourteen (14) days of receipt of a written request from a representative of the commission, each defaulted defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents, for inspection and copying.  The commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69, provided that the defaulted defendants, after attempting to resolve a dispute without court action and for good cause shown, may file a motion with this court seeking an order including one or more of the protections set forth in Rule 26(c).

B.  For matters concerning this order, the commission is authorized to communicate directly with each of the defaulted defendant.  The defaulted defendants must permit representatives of the commission to interview any employee or other person affiliated with any defaulted defendant who has agreed to such an interview.  The person interviewed may have counsel present.

C.  The commission may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to the defaulted defendants or any individual or entity affiliated with the defaulted defendants, without the necessity of identification or prior notice.  Nothing in this order limits the commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

1

## XIV.
## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this court retains jurisdiction of this matter for

purposes of construction, modification, and enforcement of this order.


**IT IS SO ORDERED**:



_____
The Honorable James C. Mahan
UNITED STATES DISTRICT JUDGE

DATED: _June 26, 2013_____

18