1

2

3

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

4

5

6

7

8

9

10

11

12

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | )  Case No. 2:11-cv-00283-JCM -GWF |
| Plaintiff, | ) |
| | ) |
| v. | )  NOTICE OF PROPOSED |
| | )  AMENDED FINAL MONETARY |
| IVY CAPITAL, INC., *et al.*, | )  JUDGMENT ONLY AS TO RELIEF |
| | )  DEFENDANT LEANNE HOSKINS |
| Defendants, and | ) |
| | ) |
| CHERRYTREE HOLDINGS, LLC, *et al.*, | ) |
| Relief Defendants. | ) |

13

14

15

16

17

18

19

        Please take notice that Plaintiff Federal Trade Commission is filing the attached Proposed

Amended Final Monetary Judgment as to Relief Defendant Leanne Hoskins (Attachment A),

pursuant to the United States Court of Appeals for the Ninth Circuit's October 5, 2015

memorandum order (docket number 441).  Also attached is the December 30, 2015 Declaration

of Dr. Kenneth H. Kelly (Attachment B) regarding the Proposed Amended Final Monetary

Judgment and applicable prejudgment interest.

20

21

Dated:  December 31, 2015                              Respectfully submitted,

22

23

24

25

26

27

                                        /s/ Shameka L. Walker
                                        SHAMEKA L. WALKER
                                        Attorney for Plaintiff
                                        Federal Trade Commission
                                        600 Pennsylvania Avenue, NW
                                        Mailstop CC-8232
                                        Washington, D.C. 20580
                                        Phone: 202-326-2570
                                        Fax: 202-326-3392
                                        E-mail: swalker@ftc.gov

**Certificate of Service**

    I hereby certify that on December 31, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send a notice of electronic filing to all counsel of record.

                                      /s/ Shameka L. Walker
                                      Shameka L. Walker

# ATTACHMENT A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

FEDERAL TRADE COMMISSION,

    Plaintiff,

v.

IVY CAPITAL, INC., *et al.*,

    Defendants, and

CHERRYTREE HOLDINGS, LLC, *et al.*,

    Relief Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:11-cv-00283-JCM -GWF

AMENDED FINAL MONETARY JUDGMENT AS TO RELIEF DEFENDANT LEANNE HOSKINS

On July 5, 2013, the court entered a Final Judgment and Order for Permanent Injunction and Monetary Relief (docket number 409) in the amount of $1,128,795.78, plus prejudgment interest against relief defendant Leanne Hoskins and $1,529,292.25, plus prejudgment interest against relief defendant Oxford Financial, LLC.

On October 5, 2015, the Court of Appeals for the Ninth Circuit issued its opinion (docket number 441) affirming in part, vacating in part, and remanding the judgment of this court as to relief defendant Leanne Hoskins.  The Ninth Circuit instructed this court to alter the judgment against Ms. Hoskins to hold her jointly and severally liable with Oxford Financial, LLC for $1,529,292.52, plus prejudgment interest.

Accordingly, the amended judgment against relief defendant Leanne Hoskins includes $1,529,292.52 in equitable monetary relief and $21,555.96 in prejudgment interest, which together total $1,550,848.48.

**IT IS HEREBY ORDERED AND ADJUDGED** that the final monetary judgment against relief defendant Leanne Hoskins is hereby amended and a monetary judgment for

**$1,550,848.48** is entered in favor of the Federal Trade Commission and against relief defendant Leanne Hoskins.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT JUDGE

DATED: January 6, 2016

**ATTACHMENT B**

**DECLARATION OF DR. KENNETH H. KELLY, CFA**
Pursuant to 28 U.S.C. § 1746

1. I, Kenneth H. Kelly, hereby state that I am above the age of 21, that I have personal knowledge of the facts set forth below, and that I am competent to testify about them. I hold a doctorate from Stony Brook University in Economics and a Master of Science degree in Applied Mathematics and Statistics from the same institution. I have been a Chartered Financial Analyst since 1992. For almost 35 years I have been employed by the Federal Trade Commission as an economist and, during that time, I have advised the Commission in numerous antitrust and consumer protection matters. In addition, I have advised other federal and state regulatory agencies on the effects of government regulation on competition and on consumers. I have published articles in economic, business, and legal journals. A true and correct copy of my curriculum vitae is at Appendix A. I have previously submitted sworn testimony in several cases, as described in my curriculum vitae.

2. I am a full time, salaried employee of the Federal Trade Commission. I do not anticipate receiving any additional compensation for my work on this matter.

3. On April 2, 2013, I executed a declaration (docket number 395) that described how I calculated prejudgment interest, pursuant to the court's March 26, 2013 (docket number 392) summary judgment order.

4. I was asked to recalculate prejudgment interest for Leanne Hoskins and Oxford Financial, LLC, relief defendants in *Federal Trade Commission* v. *Ivy Capital, Inc., etc., et al.*, in response to the U.S. Court of Appeals for the Ninth Circuit's October 5, 2015 opinion.

5. The calculation of post-judgment interest in federal cases is specified by statute. There is

no such statutory specification for the computation of prejudgment interest. I was asked by FTC legal staff to compute the prejudgment interest using the same interest rates and compounding used for post-judgment interest.

6. My calculations assume that judgment of $1,529,292.52 had been entered against the relief defendants at the end of February 2011. The applicable statutory interest rate, as reported by the Federal Reserve Bank, was 0.29%. I assumed that this interest was compounded annually.

7. Total interest, beginning at the end of February 2011 through the end of December 2015, comes to $21,555.96. When added to the $1,529,292.52 the total judgment against relief defendants Leanne Hoskins and Oxford Financial, LLC is $1,550,848.48.

8. Details of these calculations are provided in the Microsoft Excel file "IvyPrejudgmentInterest.xlsx." A printout of the relevant worksheet ("2015") from this file is attached as Appendix B.

**I declare under penalty of perjury that the foregoing is true and correct.**

12/30/2015

Date

Dr. Kenneth H. Kelly, CFA

**APPENDIX A**

**Dr. Kenneth Kelly, CFA**

## EXPERIENCE

**Economist, Division of Consumer Protection, Bureau of Economics, Federal Trade Commission** (October, 2004-present): I have testified on behalf of the FTC, the Department of Justice, and the Attorney General of California in a number of consumer protection matters. I have testified, or prepared to do so, in litigation involving pyramid schemes, advertising substantiation, investment fraud, business opportunity fraud, deceptive advertising, deceptive marketing, and mortgage lending. Since receiving the CFA charter in 1992 I have advised FTC staff and management concerning the ability of defendants to pay restitution and civil penalties, and since December, 2013 I have done so in all FTC consumer protection litigations where defendants' ability to pay has been an issue. In addition to my testimony, I produce economic, statistical, and financial analysis in consumer protection investigations. I produced a study of the financial services industry that was part of a report to Congress. I have trained antitrust enforcers from Central and South America through seminars in Venezuela (1995, 2003), Peru (2004), Columbia (2005), El Salvador (2008), Panama (2008), and the Dominican Republic (2013), and consumer protection enforcers in Egypt (2006), South Africa (2009), and Ecuador (2010). I conduct independent research on antitrust and industrial organization, commercial policy, and forensic economics.

**Adjunct Professor, Department of Applied Economics, Johns Hopkins University** (January, 2006-May 2007): I taught graduate Financial Economics in the Spring 2006 and Spring 2007 semesters.

**Economist, Division of Economic Policy Analysis, Bureau of Economics, Federal Trade Commission** (July, 1986-June, 1988; November 1988-October, 2004): My primary official responsibility was to conduct economic and financial research. This research has included a review of the effectiveness of the Commission's merger enforcement program, the impact of unfair trade practices on domestic industries, and the effect of state restrictions on airline advertising. I presented this research in the form of legal briefs and live testimony to federal, state, and local agencies through the Commission's regulatory intervention program, as well as through presentations at professional meetings and scholarly journals. However, most of my time was spent working in antitrust and consumer protection enforcement, both as lead economist and as an expert witness. I provided statistical expertise to the FTC's General Counsel and to the Assistant U.S. Attorney defending the FTC in a discrimination suit, as well as to Commission staff in enforcement investigations. After earning the Chartered Financial Analyst designation in 1992, I worked in enforcement and litigation as a financial analyst, both in the role of advising the Commission and as an expert witness. I drafted congressional testimony, speeches, and articles for the Chairman, Commissioners, and the Director of the Bureau of Economics.

**Economic Advisor to Commissioner, U.S. International Trade Commission** (March, 1986-June, 1986; June, 1988-October, 1988): In the Spring of 1986 the Federal Trade Commission faced a severe funding crisis, and I was detailed to the office of Susan W. Liebeler, then Vice Chairman of the U.S. International Trade Commission, to fill a temporary opening on her staff. I advised Vice Chairman (and then Chairman) Liebeler on policy matters and appropriate actions in antidumping, countervailing duty, safeguards (escape clause) and unfair competition investigations, and I reviewed economic studies of the ITC's Office of Economics and Office of Industries. I developed an economic methodology for measuring injury to domestic industries as the result of imports and other causes, and later published this work. I drafted opinions, speeches and other written materials for the Commissioner. In June of 1988 I returned to the ITC when Commissioner Liebeler asked that I again be detailed to her staff for the remainder of her term.

**Economist, Division of Consumer Protection, Bureau of Economics, Federal Trade Commission** (September, 1984-February, 1986): In this position I conducted investigations of a wide variety of possible violations of federal law and FTC regulations. In cooperation with Commission attorneys, I identified relevant data, and developed investigational plans. I calculated optimal penalties in civil enforcement actions, and made recommendations to the Bureau of Consumer Protection and the Commission. I participated in several rule making proceedings. These cases, investigations and rule making proceedings covered a broad range of American industries.

**Economist, Division of Antitrust, Bureau of Economics, Federal Trade Commission** (January, 1981-August, 1984): I took a leave from my academic position at Rensselaer for the Spring, 1981 through Spring, 1982 semesters for what I expected to be a temporary position at the Federal Trade Commission. My principal task was to provide economic analysis in antitrust investigations in a broad range of industries. In cooperation with FTC attorneys, I wrote subpoenas, interviewed investigation subjects, competitors, suppliers, and customers, negotiated information requests, conducted economic, econometric, and financial analysis on the data gathered, and made enforcement recommendations to the Commission. Possible violations included mergers, joint ventures, resale price maintenance, non-price vertical restraints, collusion, group boycotts, predation and price discrimination (the Robinson-Patman Act). I developed a methodology for assessing the effect of antitrust enforcement on consumer welfare.

**Assistant Professor of Economics, Rensselaer Polytechnic Institute** (September, 1978-December, 1980): In the fall of 1978 I started in a tenure track position in the Department of Economics, during which time I completed my doctoral dissertation. I taught undergraduate and graduate courses in the economics of technological change, microeconomics and macroeconomics, and developed a graduate level course in managerial economics.

**Adjunct Instructor of Economics, Hofstra University** (July, 1976-August, 1977): While in graduate school I taught introductory economics, intermediate macroeconomics and consumer economics at nearby Hofstra University.

5

**Economist, U.S. Bureau of Labor Statistics** (December, 1973-August, 1974): After completing a four year undergraduate program in two years, I went to work as an economist for the Department of Labor. In this position I designed surveys of employment by occupation in industry and government, analyzed and verified estimates obtained in these surveys, and wrote reports on the results.

## EDUCATION

| Degree | Subject | Attended | University |
|--------|---------|----------|------------|
| Ph.D. | Economics | 9/74-5/79 | Stony Brook University |
| M.S. | Applied Math & Statistics | " | " |
| B.S. | Economics-Business | 9/71-8/73 | Hofstra University |

Ph.D. Preliminary Examinations: Microeconomics, Macroeconomics, Econometrics, International Economics, Advanced Microeconomics
Doctoral Dissertation: The Economics of Risky Innovation
Dissertation Committee: Edward Ames (supervisor), John Hause, Thomas Muench, Sheldon S.L. Chang

## PROFESSIONAL CERTIFICATION

In September, 1992, I was awarded the Chartered Financial Analyst (CFA) designation. This charter is awarded by the CFA Institute to those individuals who have (i) a minimum of four years of investment work experience, defined as evaluating or applying financial, economic, and/or statistical data as part of the investment decision-making process, (ii) sequentially passed a series of three examinations covering securities law, ethical and professional standards, equity and fixed income securities analysis, derivatives, alternative investments, corporate finance, portfolio management, economics, financial accounting, and quantitative techniques, and (iii) agreed to comply with the CFA Institute's Code of Ethics and Standards of Professional Conduct. I passed all three examinations on the first effort.

## TESTIMONY

I have frequently volunteered my services to the government as a witness, both in antitrust and consumer protection matters. I have testified, in writing, through deposition, or in live courtroom testimony, in the following cases:

*FTC* v. *Dayton Family Productions, Inc., et al.,* Case No. CV-5-97-00750-PMP (D. Nev.) (Hon. Philip M. Pro) (1997-98) - I calculated earnings and consumer injury in an investment fraud, and

produced affidavits of my findings.

*In Re R.J. Reynolds Tobacco*, Docket No. 9285 (Federal Trade Commission) (Commissioners Robert Pitofsky, Sheila F. Anthony, Mozelle W. Thomson, and Orson Swindle) (1998) - I was asked to calculate the gains to the defendant from sales of tobacco products to underage purchasers, and produced an affidavit on the firm's marketing. I was deposed.

*FTC v. Lightfoot, also d/b/a Universal Direct et al.*, Case No. C-3-02-145 (S.D. Ohio) (Hon. Walter Herbert Rice) (2002) - I wrote an affidavit that this firm was operating a pyramid scheme.

*FTC v. The Tungsten Group et al.*, Case No. 2:01 CV 773 (E.D. Va.) (Hon. Raymond A. Jackson) (2002) - I wrote an affidavit that this firm was operating a pyramid scheme.

*FTC v. Travel Express International, Inc.*, Case No. 1:01-cv-0906-GET (N.D. Ga.) (Hon. G. Ernest Tidwell) (2002) - I calculated losses to consumers from alleged deceptive practices. I was deposed.

*FTC v. K4 Global Publishing, Inc., also d/b/a Instant Internet Empires et al.*, Case No. 5:03-CV-0140-3-CAR (M.D. Ga.) (Hon. C. Ashley Royal) (2003) - I wrote an affidavit that this firm was operating a pyramid scheme.

*FTC v. NEXGEN3000.com, et al.*, Case No. 4:03-cv-00120-WDB (D. Ariz.) (Hon. William D. Browning) (2004) - I wrote an expert report and affidavits stating that this firm had operated a pyramid scheme.

*FTC v. Network Services Depot, Inc., et al.*, Case No. 2:05-cv-0440-LDG-LRL (D. Nev.) (Hon. Lloyd D. George) (2005-07) - I traced funds transferred from defendant companies to individual defendants and their relatives, explained the financial interrelationships between these companies, calculated consumer injury, and presented this analysis in a series of declarations and an expert report.

*FTC v. Seismic Entertainment Productions, Inc., et al.*, Case No. 04-377-JD (D. N.H.) (Hon. Joseph A. DiClerico, Jr.) (2005-06) - I wrote a declaration that showed the earnings of Sanford Wallace from a "spyware" scheme.

*FTC v. Lane Labs-USA, Inc., et. al.*, Case No. 00CV3174 (D. N.J.) (Hon. Dennis M. Cavanaugh) (2008-09) - I wrote a report critiquing the work of an expert for the other side who calculated what he claimed were appropriate damages, and a sur-rebuttal report that critiqued that expert's response. I was deposed.

*FTC v. Alternatel, Inc., et. al.*, Case No. 08-21433-CIV-Jordan (S.D. Fla.) (2008) I wrote a declaration that examined the financial statements and tax returns of defendant companies,

computed prejudgment interest, and performed a statistical analysis of tests of the defendants' products. I was deposed.

*US* v. *Regenesis 2x2*, Case No. 409-813-0023275-S (2009) I wrote a declaration that was used to obtain a search warrant for a firm operating what appears to be a pyramid scheme.

*FTC* v. *Home Assure, LLC, et. al.*, Case No. 8:09-cv-547-T-23 TBM (M.D. Fla.) (2009) I wrote an expert report that described how I selected a random sample of the defendant firm's clients, analyzed documents for these clients, determined which clients were or may have been assisted by the defendant firm, and performed sensitivity analysis. I also wrote a supplemental report that updated my earlier report to include new information. I was deposed.

*FTC* v. *Federal Loan Modification Law Center, LLP et al.*, Case No. SACV09-401 CJC (MLGx) (Hon. Cormac Carney) (2009) I wrote a declaration that described how I selected a random sample of customer files, and performed a statistical analysis of the sample.

*FTC* v. *EDEBITPAY, LLC, et al.*, Case No. CV-07-4880 ODW (AJWx) (C.D. Cal.) (Hon. Otis D. Wright II) I wrote a declaration that described how I selected a random sample of products, determined the prices of these products from alternative sellers, and performed calculations on the data. I was deposed.

*FTC* v. *Grant Connect, LLC et al.*, Case No. 09-CV-01349-RLH-RJJ (D. Nevada) I wrote a declaration and expert report that computed sales by defendants from the alleged deceptive marketing of various products, and computed prejudgment interest, and second and third declarations that updated the prejudgment interest calculations.

*FTC* v. *Global U.S. Resources et al.*, Case No. 310-CV-1457 (VLB) (D. Connecticut) (Hon. Vanessa L. Bryant) I wrote a declaration that computed sales of the defendant from a work at home scheme, and computed prejudgment interest.

*FTC* v. *First Universal Lending, LLC, et al.*, Case No. CV-09-82322-CIV-ZLOCH (S.D. Florida.) (Hon.William J. Zloch) I wrote a declaration describing how I computed revenue the defendant firm earned from various categories of customers.

*FTC* v. *Swish Marketing, Inc., et al.*, Case No. C09-03814 RS (N.D. California) (Hon. Richard Seeborg) I wrote a declaration describing my analysis of revenue and profit of the defendant firm and the importance of one of its customers to that revenue and profit.

*FTC* v. *Millennium Telecard, Inc., et. al.*, Case No. 2:11-cv-02479-JLL-CCC (D. New Jersey) (Hon. Jose L. Linares) I wrote a declaration describing the statistical analysis I did of tests performed on the defendants' products.

8

*FTC* v. *Direct Benefits, et. al.*, Case No. 6:11-CV-1186-JAGJK (C.D. Fla) (Hon. John Antoon) (2011) Defendants had claimed that a working paper by Federal Reserve system economists supported their claim that their return rates were not out of the ordinary. I wrote a declaration that explained that the defendants mis-characterized the paper, and a second declaration that updated the first.

*FTC* v. *American Precious Metals, LLC, et. al.*, Case No. 11-61072-CIV-ZLOCH (S.D. Fla) (Hon. William J. Zloch) (2011) Defendants sold precious metals to investors. I analyzed the investment performance of customers of the defendants, and decomposed investor returns into returns due to changes in metal prices and the costs of transactions fees. I found that although investors in aggregate made money from increases in metals prices they lost money after deducting some of the transactions costs they had to pay. I reported my analysis in a declaration and in an expert report.

*FTC, et al.* v. *LeanSpa, LLC, et al.*, No. 3:11-CV-1715 (VLB) (D. Conn. Filed Nov. 7, 2011) I analyzed bank statements for accounts belonging to various defendants. I produced a declaration that computed transfers of funds between these accounts and discussed transfers from these accounts. After the FTC won summary judgment I produced another declaration that computed prejudgment interest for relief defendant Core Logic.

*FTC* v. *Lights of America, Inc., et al.*, Case No. SACV10-01333JVS(MLGx) (C.D. Cal.) (Hon. James V. Selna) I computed consumer injury to consumers who purchased deceptively labeled light bulbs. I testified in court about this, and also about the errors made by an opposing expert.

*FTC* v. *Ivy Capital, Inc., et al.*, Case No. 2:11-cv-00283-JCM-GWF (D. NV Filed February 22, 2011) I wrote an expert report that described how I drew a random sample of recorded phone conversations between defendants' employees and consumers and analyzed the same. I was deposed. I wrote declarations that computed damages including prejudgment interest.

*FTC* v. *DR Phone Communications, Inc.*, Case No. C-12-2631-SC (N.D. Calif. Filed May 22, 2012) I wrote a declaration describing the statistical analysis I did of tests performed on the defendants' products.

*FTC* v. *Broadway Global Master Inc., et al.*, Case No. 2:12-cv-0855 JAM GGH (E.D. Cal.) (Hon. John A. Mendez) (2012) I produced a declaration in which I calculated consumer injury in a debt collection fraud.

*FTC* v. *Debt Relief USA, Inc., et al.*, Case No. 3:11-CV-2059-N (N.D. TX) (Hon. David Godby) (filed August 18, 2011) I wrote an expert report in which I analyzed the performance of firm that analyzed and sold debt relief services. I showed that the amount of money that the firm claimed it could save consumers were not supported by the firm's own data.

*FTC et. al.* v. *The Tax Club, Inc. et. al.,* Case No. 13-CV-210 JMF (S.D. N. Y.) (2013) I produced a declaration that estimated consumer injury, and described the process by which I selected a random sample of consumers who requested refunds from the defendants.

*U.S.* v. *Donna Bello and Jill Platt* Case No. 12-CR-84 AWT (CT) (2012) In this criminal case, brought by the U.S. Attorney for Connecticut on behalf of the Internal Revenue Service, I produced an expert report, with supplementary reports, and testified live in court that the "Women's Gifting Table" was a pyramid scheme.

*FTC* v. *Consumer Health Benefits Association et. al.*, Case No. 10-CV-03551 (ILG) (RLM) (E.D.N.Y.) I produced an expert report that estimated the amount of money that defendants collected from consumers from the sale of medical and pharmacy discount plans (net of chargebacks and refunds); the amount of purported savings, if any, that consumers utilizing the plans realized according to documents from corporate defendants and third party benefit providers; and evaluated the magnitude and distribution of these purported savings. I produced a second expert report that updated these numbers based on new data. I was deposed.

*FTC* v. *Jeremy Johnson et. al.,* Case No. 10-CV-02203 (MMD) (GWF) (D. Nev.) I estimated damages, including prejudgment interest, for corporate defendant iWorks and related defendants.

## PUBLICATIONS

### Articles

"One Lump or Two: Unitary versus Bifurcated Measures of Injury at the USITC," *Economic Inquiry*, Vol. 44, No. 4, October, 2006 (with Morris E. Morkre).

"Competition and Quality in Deregulated Industries: Lessons for the Education Debate," *Texas Review of Law & Politics*, Spring, 2002 (with Jerry Ellig).

"Do Unfairly Traded Imports Injure Domestic Industries?," *Review of International Economics* Vol. 6, No. 2, May, 1998 (with Morris E. Morkre); reprinted in Douglas R. Nelson and Hylke Vandenbussche, eds., *The WTO and Antidumping*, Edward Elgar Publishing, 2005.

"Empirical Analysis for Antitrust and International Trade Law," *University of Cincinnati Law Review*, Vol. 61, No. 3, 1993.

"Some Perspectives Concerning the Effects of Unfair Imports on Domestic Industries," *University of Cincinnati Law Review*, Vol. 61, No. 3, 1993 (with Morris E. Morkre).

"Merger Efficiencies: The Prodigal Son of Antitrust?," *The Journal of Reprints for Antitrust Law and Economics*, Vol. 21, No. 1, 1991.

10

"The Antitrust Analysis of Grocery Slotting Allowances: The Procompetitive Case," *Journal of Public Policy & Marketing*, Vol. 10, No. 1, Spring, 1991.

"Can Imports Injure a Domestic Industry When They Decline?," *Research in Law and Economics*, Vol. 12, 1989.

"The Analysis of Causality in Escape Clause Cases," *Journal of Industrial Economics*, Vol. 37, No. 2, December, 1988. Reviewed in *Business Economics*, Vol. 24, No. 2, April, 1989.

"The Role of the Free Rider in Resale Price Maintenance: The Loch Ness Monster of Antitrust Captured," *George Mason University Law Review*, Vol. 10, No. 1, Spring, 1988. Reviewed in *Washington Antitrust Report*, Vol. 2, No. 4, Summer, 1988.

"The Role of Risk Aversion in the Allocation of Resources to Invention," *Federal Trade Commission Working Paper No. 51*, March, 1982.

## Monographs

*QUANTIFYING CAUSES OF INJURY TO U.S. INDUSTRIES COMPETING WITH UNFAIRLY TRADED IMPORTS: 1989 TO 1994*, Bureau of Economics, Federal Trade Commission, 2002 (with Morris E. Morkre).

*EFFECTS OF UNFAIR IMPORTS ON DOMESTIC INDUSTRIES: U.S. Antidumping and Countervailing Duty Cases, 1980 to 1988*, Bureau of Economics, Federal Trade Commission, 1994 (with Morris E. Morkre).

*OCCUPATIONAL EMPLOYMENT: AGRICULTURAL CHEMICALS INDUSTRY, APRIL 1971*, Report 430-61, U.S. Department of Labor/Bureau of Labor Statistics, November, 1974.

*OCCUPATIONAL EMPLOYMENT: GUM AND WOOD CHEMICALS AND MISCELLANEOUS CHEMICAL PRODUCTS, APRIL 1971*, Report 430-56, U.S. Department of Labor/Bureau of Labor Statistics, September, 1974.

## Reviews

P.K.M. Tharakan, ed., *Policy Implications of Antidumping Measures*, in *Public Choice*, Vol. 75, No. 3, March, 1993.

William B. Tye, *The Theory of Contestable Markets*, in *Business Economics*, Vol. 27, No. 4, October, 1992.

Donald Dewey, *The Antitrust Experiment in America*, in *The Manual of Antitrust Economics*, 1992.

11

**Professional Presentations**

"The Economics of Ponzi Schemes," Department of the Treasury Ponzi Scheme Conference, New York, NY, July, 2011

"The Event Study as a Investigative Tool in Merger Enforcement: The Case of Palladium," International Industrial Organization Conference, Atlanta, Georgia, April, 2005 (discussant and conference chair at same conference).

"One Lump or Two: Unitary vs. Bifurcated Measures of Injury from Unfairly Traded Imports," (with Morris E. Morkre), Western Economics Association, Vancouver, British Columbia, July, 2004.

Invited Participant, Workshop on Competition and Investment, Yale Center for the Study of Globalization," April 1, 2003.

"Are Slotting Allowances Anticompetitive?," The American Consumer and the Changing Structure of the Food System, Economic Research Service, U.S. Department of Agriculture, May, 2000.

Panelist, Discussion of Slotting Allowances, Marketing and Public Policy Conference, American Marketing Association, Washington, DC, May, 1996.

Discussant, Marketing and Public Policy Conference, American Marketing Association, Atlanta, GA, May, 1995.

"Empirical Analysis for Antitrust and International Trade Law," and "Perspectives on the Effects of Unfair Imports on Domestic Industries," (with Morris E. Morkre), Western Economics Association, Seattle, WA, July, 1991.

"The Antitrust Analysis of Grocery Slotting Allowances: The Procompetitive Case," Marketing and Public Policy Conference, American Marketing Association, Washington, DC, June, 1990.

"Escape Clause Relief: A Decision Theoretic Approach," presented at the Operations Research Society of America/The Institute of Management Science Joint National Meeting, New York, October, 1989.

"Firm Size and Research Productivity," presented at the North American meeting of the Econometric Society, Denver, CO, September, 1980.

## HONORS AND AWARDS

Janet Steiger Award, Federal Trade Commission, 2004

Outstanding Scholarship Award, Federal Trade Commission, 1993

Phi Beta Kappa, 1974

Letter of Commendation, National Science Foundation Graduate Fellowship Program, 1974-75.

Bachelor of Science *summa cum laude* with Highest Honors in Economics, Hofstra University, 1974.

Omicron Delta Epsilon, International Honor Society in Economics, 1973.

New York State Regents College Scholarship, 1971-1973.

Hofstra University Distinguished Academic Scholarship, 1971-1973.


## PROFESSIONAL ASSOCIATIONS

CFA Institute

National Association of Forensic Economists

## PERSONAL


Address:      Bureau of Economics
              Federal Trade Commission
              600 Pennsylvania Avenue, NW
              Washington, DC 20580
              Phone: (202) 326-3358
              Fax:   (202) 326-3443
              E-MAIL: kkelly@ftc.gov

**APPENDIX B**

| | 2/28/2012 | 2/28/2013 | 2/28/2014 | 2/28/2015 | 12/28/2015 | Total | Interest |
|---|---|---|---|---|---|---|---|
| Oxford Financial | $ 1,529,292.52 | $ 4,434.95 | 4,447.81 | $ 4,460.71 | $4,473.64 | $ 4,486.62 | $ 1,551,596.25 | $ 22,303.73 |

Interest calculations from 2/24/11, using statutory rate of 2/18/11